William **BERRYHILL**, Appellant,

v.

**PACIFIC FAR EAST LINE, Inc.,**
a Corporation, Appellee.

No. 14993.

United States Court of Appeals
Ninth Circuit.

Oct. 24, 1956.

Rehearing Denied Feb. 18, 1957.

Jay A. Darwin, Charles H. Warren, Darwin, Peckham & Warren, San Francisco, Cal., for appellant.

Dorr, Cooper & Hays, Charles W. Kenady, Jay T. Cooper, San Francisco, Cal., for appellee.

Before STEPHENS, BONE, and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Appellant sues for personal injuries sustained when a grinding wheel, owned and furnished by appellant's employer, Todd Shipyards Corporation, shattered or disintegrated while the S. S. "Flying Dragon", owned by appellee, was docked for repairs. These repairs were performed under contract made between the appellee shipowner and the Todd Shipyards Corporation. The grinding wheel had been attached to a portable grinding machine or tool, owned and furnished by Todd. Repairs were being made on the "shaft keyway" of the ship.

Appellant's complaint and the interrogatories filed show that the grinding wheel was alleged to have been unseaworthy. Appellee's motion for judgment on the pleadings was granted. This appeal followed.

Appellant relies on the theory expressed in Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, and subsequent cases hereinafter discussed. In the Sieracki case, a shore-side worker, (a stevedore), was held covered by the shipowner's absolute liability for breach of warranty of seaworthiness.

In that case the latent defect was in the ship's shackle which supported the ship's boom. The person injured was loading cargo aboard the ship; traditionally a part of "the ship's work".

Appellant quotes in his brief the following language from that case:

"On principle we agree with the Court of Appeals that this policy (warranty of seaworthiness) is not confined to seamen who perform the ship's service under immediate hire to the owner, but extends to

those who render it with his consent, or by his arrangement. All the considerations which gave birth to the liability and have shaped its absolute character dictate that the owner should not be free to nullify it by parcelling out his operations to intermediary employers whose sole business is to take over portions of the ship's work or by other devices which would strip the men performing its service of their historic protection." [Appellant's Brief, p. 6.]

The Supreme Court case which followed the Sieracki decision and refused to limit the extension of the doctrine of absolute liability to stevedores, alone, was Pope & Talbot, Inc., v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. There the injured man, an employee of an independent contractor, was a workman adjusting "feeders" used to load the vessel with grain. He was injured by falling through an uncovered hatch.

In Torres v. The Kastor, 2 Cir., 1955, 227 F.2d 664, an independent contractor was cleaning a vessel of loose pitch, to make the vessel ready for general cargo. Again, such labor is traditionally a part of ship's work, usually performed by the crew.

In Petterson v. Alaska Steamship Co., 9 Cir., 1953, 205 F.2d 478, this court held the shipowner liable for unseaworthiness when a stevedore was injured because a snatch-block broke. This snatch-block had been brought aboard the vessel by the injured man's employee. The operation, to-wit: loading, was again part of the traditional "ship's work".

The Supreme Court, in a per curiam decision, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, affirmed this court's decision. Mr. Justice Burton dissented, and was joined by Mr. Justice Frankfurter and Mr. Justice Jackson. The dissent points out that the Sieracki and Hawn cases assert the liability of a shipowner to stevedores and carpenters "for the unseaworthiness of his [the shipowner's] ship and its equipment * * *. They assert the liability of a shipowner to stevedores and carpenters who, in consequence of the unseaworthiness of his ship or its equipment, are injured on board *in navigable waters while engaged in work connected with loading or unloading the ship*. Those cases establish that such liability for unseaworthiness exists although the injured maritime workers are not employees of the shipowner but are employees of a third party who is under contract to supply stevedoring services." (Italics added.)

The dissent points out that the majority affirmance in Petterson goes one step further than Sieracki and Hawn cases, in holding that the equipment which causes the injury need not belong to the shipowner nor be a part of the ship's equipment.

Just how far should this doctrine be extended?

The doctrine of seaworthiness, and the shipowners' absolute liability for the lack of it, was first enunciated in The Osceola, 1902, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760:

"The vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship."

This was because the Master's power was absolute on any ship. In any weather and under any conditions the seaman was required to do the ship's work, with the equipment furnished by the shipowner, and in whatever places or areas the master saw fit to order.

The Sieracki case extended the indemnity to stevedores, says Justice Burton in his dissenting Petterson opinion:

"* * * largely on the premise that the stevedores were then rendering services usually and formerly performed by the crew. The decision assumed that the stevedores, like their predecessors, used the ship's equipment." 347 U.S. 396, 400, 74 S.Ct. 601, 603.

To quote the Sieracki case directly:

"For these purposes he [the stevedore] is, in short, a seaman because he is doing a seaman's work and incurring a seaman's hazards." 328 U.S. 99, 66 S.Ct. 880.

The Hawn case extended the doctrine to a carpenter. Hawn was not a stevedore, but a workman repairing the equipment the stevedores used to unload the ship. Thus, it had to do with "ship's work".

The Petterson case, by the majority opinion of the Supreme Court, extended the absolute liability to an injury to a stevedore caused by the breaking of a snatch-block, furnished by the stevedore's employer. This equipment took the place of equipment usually furnished and necessarily required by the ship. It was ship's equipment necessary to enable the crew to perform "ship's work", i.e., loading and unloading.

In Rogers v. United States Lines, 1954, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120, the Supreme Court affirmed the Petterson holding. In that case the plaintiff, a stevedore, was injured when a "runner" furnished by plaintiff's employer, to be used on one of the vessel's winches for unloading purposes, was defective and broke. Again, the equipment was reasonably necessary to permit the stevedore to do the "ship's work" which historically it was the duty of the crew to perform.

The facts in this instant case would extend the doctrine of absolute liability for unseaworthiness, Mahnic v. Southern Steamship Co., 321 U.S. 96, 100, 64 S.Ct. 455, 88 L.Ed. 561, beyond any previous holdings. Here the repairs had nothing to do with loading or unloading the ship. The propulsion machinery of the vessel itself was being repaired. Not all repairs are "ship's work", to be performed, historically or currently, by the crew.

The Supreme Court refers to the repairs Hawn was making to the loading equipment as "slight". The purpose of his repairing was to permit the loading "to go on at once". This would indicate a doubt in the court's mind if any very general repairs to a ship could, or should, be included as "ship's work". In the instant case, the repairs were nothing of an improvised, hurried nature, done to save the "ship work" time, but were of sufficient importance to cause the ship to be drydocked.

The Courts have recognized the distinction between the protection required by a seaman, and one who works on a ship cradled on dry land. The very reason for the rule of absolute liability ends,[1] when the vessel is not on water. As the appellee here points out, a district court said in Manera v. United States, D. C.E.D.N.Y.1954, 124 F.Supp. 226, 227:

"Since he was not a seaman and was not exposed to the peril of descending from the 'tween deck into this lower hold while the ship was rolling or pitching on the high seas, the test to be applied must be that of what a business guest was entitled to exact from the ship, while in the performance of such a task as he was engaged in while the ship was lying at this repair yard dock. It is believed that the foregoing is a correct statement in view of all that was written in Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202 [98 L.Ed. 143]." [Brief for Appellee, p. 9.]

The Sieracki, the Hawn and the Petterson cases have indeed extended the rule of The Osceola case. Appellant asks us to step one further pace toward an absolute liability of the owner of a vessel for defects existing in equipment that the ship could do without, that the owner may never have bought or even seen, or have had any reason to know it existed.

The appellant has his statutory remedy against his employer. Longshoremen's

---

1. See Meyers v. Pittsburgh Steamship Co., 6 Cir., 1948, 165 F.2d 642; Guerrini v. United States, 2 Cir., 1948, 167 F.2d 352; Martini v. United States, 2 Cir., 1951, 192 F.2d 649; Manera v. United States, D.C.1954, 124 F.Supp. 226.

and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. He has his common law remedy as a business invitee against the shipowner, if he can prove the latter's negligence. In view of such rights and protection, he does not need, nor should he ask, for the further extension of a doctrine already stretched. If there exists a social need for such an extension (which we doubt in view of existing remedies), it is a matter for Congressional enactment, and not for this Court to bring about, thru judicial legislation. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 286, 72 S.Ct. 277, 96 L.Ed. 318.

Judgment affirmed.

Affirmed.