**Gunnleik BERGE, Plaintiff,**

v.

**NATIONAL BULK CARRIERS, Inc. and Todd Shipyards Corp., Defendants.**

United States District Court
S. D. New York.

Feb. 26, 1957.

Harry H. Lipsig, New York City, for plaintiff (Klonsky & Steinman, New York City, of counsel).

Frederick H. Cunningham, New York City, for defendant National Bulk Carriers, Inc. (Victor S. Cichanowicz, New York City, of counsel).

Galli & Locker, New York City, for defendant Todd Shipyards Corp. (Patrick J. McCann, New York City, of counsel).

MURPHY, District Judge.

In its final form, this is an action for personal injuries brought against National Bulk Carriers, Inc. on the theory of unseaworthiness only. National Bulk in turn sues Todd Shipyards Corp. alleging that Todd is obliged to indemnify it should it be held liable to plaintiff.

After trial, but before submission to the jury, all the parties agreed that the court should reserve to itself three factual issues, to wit, (1) whether or not defendant National Bulk Carriers retained control over the vessel, the S.S. Bulklube; (2) whether or not the shackle pin was defective, and (3) if yes, wheth-

er or not this was the proximate cause of the accident. The case was given to the jury solely on the question of damages. A verdict of $100,000 was returned. After trial motions were made by both defendants to set it aside as being excessive.

The legal issues awaiting decision by the court relate to whether or no the warranty of seaworthiness applies to this plaintiff and whether or no defendant Todd is obligated to indemnify defendant National Bulk Carriers.

Most of the facts were undisputed. National Bulk Carriers, the owner and operator of the tanker S.S. Bulklube, entered into a contract with Todd whereby the latter was to perform certain rather extensive repairs, including renewals of the transverse and longitudinal bulkheads, for a contract price of $981,-133. The vessel was delivered to Todd on June 22, 1952, and returned to its owner December 19, 1952. On the date of the accident it was tied up alongside a pier in Todd's shipyard.

By the terms of the contract, the work was to be carried out "under the supervision of and to the satisfaction of representatives of the U. S. Coast Guard, American Bureau of Shipping and Owner." In this connection, the vessel's former chief mate was aboard every day from 8 A.M. to 5 P.M. acting as Assistant Repair Supervisor. Sleeping quarters aboard ship were available for his convenience if he chose to use them. He had not signed articles and was paid a weekly salary the same as defendant's other shoreside employees. National Bulk Carriers' Port Engineer also came aboard every day, although he had no regular hours. These men gave no orders but inspected the work as it was completed.

The contract also called upon Todd to provide all the necessary labor and material required for the completion of the work, and it is conceded that Todd supplied the materials involved in the accident, including the shackle pin.

There were no provisions in the specifications pertaining to indemnification.

The printed terms on Todd's letterhead contain the following language: "In connection with the accident and/or indemnity and/or insurance clauses, if any, contained in your specifications, relating to liability for personal injuries, please note that we do not agree to same, in so far as they undertake to impose any liability or any obligations to take out or maintain insurance beyond the liabilities or the obligations to insure imposed upon us by law." The specifications were accepted subject to the above condition.

On October 31, 1952, the date of the accident, plaintiff was employed as a rigger by Todd. He and several other men were working below deck in one of the tanks of the Bulklube. The specific task involved the installation of a tank bulkhead. Prior to the accident the bulkhead had been removed and renewed by Todd. The installation operation proceeded in the following manner: employees of Todd welded padeyes to the under-deck, attached shackles to them, hung chain hoists from the shackles, brought the bulkhead from the pier and lowered it into the tank, welded padeyes onto the bulkhead, attached the above mentioned chain hoists to the bulkhead, raised it 3″ to 4″ off the deck and set it against the framework where it was permanently welded into place, and finally removed the padeyes from the bulkhead and the under-deck. Plaintiff was standing on a scaffold approximately 15 feet above the bottom of the tank, and had just begun pulling on the chain hoist to raise the bulkhead into position when the shackle pin between the chain hoist and the under-deck padeye sheared off and the chain part of the tackle fell hitting the plaintiff who fell from the scaffold to the deck below. Upon inspection after the accident, the shackle pin was found to be sheared in half although it appeared to be bright and shiny.

Upon these undisputed facts I find: (1) that at the time of the accident defendant National Bulk Carriers was not in control of the vessel; (2) that the shackle pin was defective, and (3) that

the defective shackle pin was the proximate cause of the accident.

Thus, plaintiff is entitled to a verdict if he can avail himself of the warranty of seaworthiness. The issue of control is no longer of much importance since the decision of Petterson v. Alaska S.S. Co., 9 Cir., 1953, 205 F.2d 478, affirmed 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.

Plaintiff relies primarily upon Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc., v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; and Lester v. United States, 2 Cir., 1956, 234 F.2d 625, certiorari granted 1956, 352 U.S. 889, 77 S.Ct. 130, 1 L.Ed.2d 85. Sieracki was the first of a series of opinions extending the benefits of the warranty of seaworthiness to those other than seamen. Plaintiff in that case was a stevedore employed by an independent contractor, actually engaged in loading the vessel at the time of the accident. The court stated the problem to be "whether the shipowner's obligation of seaworthiness extends to longshoremen *injured while doing the ship's work aboard.*" 328 U.S. at page 89, 66 S.Ct. at page 875 (emphasis added). In this connection the court went on to say that "historically the work of loading and unloading is the work of the ship's service, performed *until recent times by members* of the crew." 328 U.S. at page 96, 66 S.Ct. at page 878. References to traditional ship's service are frequent throughout the opinion and leave little doubt that the warranty of seaworthiness was extended only to those stevedores performing traditional ship's service, and not to longshoremen in general.

In Pope & Talbot, Inc., v. Hawn recovery on the basis of unseaworthiness was permitted a carpenter, employed by an independent contractor, who was injured while repairing a "slight defect" in the grain loading equipment during loading operations. But here again the basis for extension of the warranty rested on the type of work done and its relation to the ship. In his concurring opinion Mr. Jus-

tice Frankfurter discussed Sieracki and concluded that "the decision was based on the fact that longshoremen were doing seamen's work and that therefore they should be entitled to a seaman's remedy." 346 U.S. at page 415, 74 S.Ct. at page 208.

The Lester case involved an electrician employed by the Marine Basin Co. who was injured upon a dry-docked vessel while working on the running light panel. The Court of Appeals reversed the trial judge and denied recovery on the ground that the ship was not unseaworthy. Plaintiff makes much of the fact that the government seems to have conceded in its brief that a warranty of seaworthiness applied. But the issue was never raised and the Court of Appeals never discussed it. Had the court held in libelant's favor there might be some merit in plaintiff's contention that silence implied assent but since the decision was in respondent's favor we feel any inference is unwarranted.

 Applying the standards suggested by Sieracki and Pope & Talbot, Inc., v. Hawn to the present case, it is obvious that the nature of Mr. Berge's employment makes his case easily distinguishable from those on which he relies. The cases of Berryhill v. Pacific Far East Line, 9 Cir., 1956, 238 F.2d 385 and West v. United States, D.C.E.D. Pa.1956, 143 F.Supp. 473, the facts in which are almost identical to those in the case at bar, are more clearly analogous. Both cases in denying recovery stressed, as indeed the Supreme Court did, that the warranty of seaworthiness was extended to workmen other than seamen in the traditional sense of the word, because they were "doing a seaman's work and incurring a seaman's hazards." Seas Shipping Co. v. Sieracki, supra, 328 U.S. at page 99, 66 S.Ct. at page 880.

The test then is not the name given to plaintiff's calling or trade but the nature of his work, and viewed in this light it is abundantly clear that plaintiff was not performing usual seaman's work. Granting that seamen have historically been required to perform some repair work

both at sea and in port, nevertheless, they have never traditionally been required to remove, renew and reinstall transverse and longitudinal bulkheads—work which amounts to a virtual rebuilding of the interior of the vessel. Since the whole rationale of Sieracki rests on the premise that a shipowner cannot escape its absolute obligation to provide a seaworthy vessel by contracting to have a third party perform the services traditionally performed by seamen, it becomes apparent that once the third party performs services different from those usually performed by seamen, the warranty of seaworthiness which was historically designed to protect seamen, need no longer apply. *Cessante ratione legis, cessat et ipsa lex.* Consequently the complaint is dismissed.

In view of this determination the question of indemnification and the motions to set aside the verdict as excessive have become moot. No decision is rendered concerning them, and they are dismissed and denied, without prejudice to their being raised again should the need arise.

Judgment accordingly.