256 F.2d 671
 Edgar Allen WEST, Appellant,
v.
UNITED STATES of America, United States Department of
Commerce, Maritime Administration (Respondents),
(Atlantic Port Contractors, inc.,
Impleaded Respondent).
 No. 12507.
 United States Court of Appeals Third Circuit.
 Argued June 2, 1958.
Decided July 2, 1958.
 
 Abraham E. Freedman, Philadelphia, Pa. (Joseph Weiner, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellant.
 Carl C. Davis, Washington, D.C., for U.S. (George Cochran Doub, Asst. Atty. Gen., G. Clinton Fogwell, Jr., U.S. Atty., Philadelphia, Pa., Leavenworth Colby, Atty., Dept. of Justice, Washington, D.C., George Jaffin, Atty., Dept. of Justice, New York City, Harold K. Wood, U.S. Atty., Philadelphia, Pa., on the brief).
 Thomson F. Edwards, Philadelphia, Pa., for Atlantic Port Contractors (John B. Hannum, 3rd, Philadelphia, Pa., on the brief).
 Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This is an appeal from a judgment for the respondent in a personal injury case brought by the libelant against the United States as owner of a ship called 'S.S. Mary Austin.' The case is here for the second time. Following the first hearing, we sent it back to the district court for a further finding which has been made, 3 Cir., 1957, 246 F.2d 443. The case comes to us after a very competent discussion of its problems by the trial judge, D.C.E.D.Pa.1956, 143 F.Supp. 473, which has already been cited with approval by other courts.[1] We do not need to state more than a brief summary of the facts for the purpose of our discussion here.
 
 
 2
 The 'Mary Austin,' owned by the United States, was one of the ships put in 'moth balls' at Norfolk, Virginia, after World War II. During the Korean conflict the decision was made to reactivate her and she was towed from Norfolk to Chester, Pennsylvania, and from Chester brought up and tied alongside a pier in Philadelphia. The contract for the work to put the ship back in service was let to a concern called Atlantic Port Contractors, Inc. This company had full charge of the work. On the day of the accident which is the source of this litigation, West, an engineer, was working in the low-pressure cylinder of the ship's main engine. He was hit on the knee by a metal plug which came out of an overhead water pipe when some other employee of the contractor turned on the water without warning. The plug was evidently loose enough so that the pressure of the water forced it from the pipe. West sues for the injuries thus received.
 
 
 3
 The libelant's case is in the usual form for this type of litigation. Unseaworthiness is charged; likewise, negligence in failing to provide plaintiff with a 'safe place to work.' The latter can be treated first because its discussion will take a very short time. On West's behalf it is urged that the duty to provide a safe place to work is absolute and nondelegable and hence the United States, as owner of the ship, cannot escape responsibility by placing a contractor in charge of the ship. In other words, we would have, if libelant's theory were followed, something like, and even greater than, the insurer's liability for seaworthiness which an owner fails to fulfill at his peril.
 
 
 4
 But the legal responsibility for the place in which a workman carries on activities is not an insurer's liability for safety but responsibility only for the exercise of reasonable care with regard to the premises at which work is done. It is a nondelegable duty but not an absolute one. It is rather a nondelegable obligation that reasonable care shall be used. This was pointed out with clarity by this Court in Barbazon v. Belships Co., 3 Cir., 1953, 202 F.2d 904, and reiterated by us in Osnovitz v. United States, 3 Cir., 1953, 204 F.2d 654.
 
 
 5
 So far as these premises were concerned there was no lack of safety. Even if the plug was loose that did no harm to West or anyone else. The accident to West came because a fellow employee of the contractor did a positive and negligent act. For such superadded, affirmative conduct, the owner of the premises is not responsible. See 2 Restatement, Torts 426 (1934).
 
 
 6
 We come then to the problem of seaworthiness. Here is a responsibility not discharged by the exercise of reasonable care. Mahnich v. Southern Steamship Co., 1944, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. In Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, this protection was extended to a stevedore who was doing seamen's work.[2]
 
 
 7
 We do not think that the 'Mary Austin' at the time of this accident was a ship in navigation nor do we think that the work which West was doing was seamen's work so that the warranty of seaworthiness ran to him.
 
 
 8
 Counsel for the libelant insists that anything floating on the water is in navigation although he concedes that an uncompleted vessel just launched is not in navigation. See Franke v. Bethlehem-Fairfield Shipyard, Inc., 4 Cir., 1942, 132 F.2d 634. But cf. United States v. Lindgren, 4 Cir., 1928, 28 F.2d 725.
 
 
 9
 The closest ruling authority is Desper v. Starved Rock Ferry Co., 1952, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205. There sightseeing boats had been hauled up on the shore for the winter layoff. The Court held that the warranty of seaworthiness did not extend to the libelant's decedent who was fatally injured while engaged in painting and repairing these vessels in preparation for their seasonal launching. We do not find in the Court's discussion in that case any such rule of thumb test as contended for by the appellant. We think the reason which controls here is that the vessel was out of service as a ship fully and as completely as a vessel which has just been launched but which is not yet ready for service as a ship. See Harris v. Whiteman, 5 Cir., 1957, 243 F.2d 563; cf. Gonzales v. United States Shipping Bd., D.C.E.D.N.Y.1924, 3 F.2d 168. See, also, Owens v. United States, D.C.S.D.Fla.1957, 1958 A.M.C. 216 (a case similar to ours). It is not as though the 'Mary Austin' had finished a voyage and was having repair work done before resuming business again. This ship had been laid up for some time and had to be thoroughly rehabilitated before getting back to service. She had no crew, contrary to argument made by libelant. There were employees of the United States on the ship. They had signed no articles and they were there not as a ship's crew but as inspectors on behalf of the United States to see that the work was done in accordance with the contract.
 
 
 10
 The same sort of argument applies to the work which West was doing. It may be possible to say, as the Supreme Court has, that a stevedore loading or unloading a ship (Sieracki, supra), or a carpenter repairing grain-loading equipment on a ship in active navigation (Pope & Talbot, Inc., v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143), are performing work of a maritime nature. But this libelant was a shoreside engineer who came on board to work on the rehabilitation job preparatory to getting the ship back into service. That is not something which bears any resemblance to marine navigation.
 
 
 11
 Each of these cases differs from the next in some respects of course. We find Berryhill v. Pacific Far East Line, Inc., 9 Cir., 238 F.2d 385, certiorari denied 1957, 354 U.S. 938, 77 S.Ct. 1400, 1 L.Ed.2d 1537, and Raidy v. United States, 4 Cir., 1958, 252 F.2d 117, assuming and adopting the trial court's opinion reported in D.C.D.Md.1957, 153 F.Supp. 777, certiorari denied 1958, 78 S.Ct. 1136, helpful and very close to ours. Judge Hand puts it well in Berge v. National Bulk Carriers Corp., 2 Cir., 1958, 251 F.2d 717, 718, 'Obviously there must be some limit, else the whole fabrication of a new ship would be included (within the Sieracki rule). We can only say that the reconstruction of a ship was not traditionally the task of the crew.' Read v. United States, 3 Cir., 1953, 201 F.2d 758, is distinguishable, from the instant case at least, on the amount of work involved.
 
 
 12
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Berge v. National Bulk Carriers, Inc., D.C.S.D.N.Y.1957, 148 F.Supp. 608, affirmed 2 Cir., 1958, 251 F.2d 717; Raidy v. United States, D.C.D.Md.1957, 153 F.Supp. 777, affirmed 4 Cir., 252 F.2d 117, certiorari denied 1958, 78 S.Ct. 1136
 
 
 [2]
 At least the theory was that he was doing seamen's work although it is now asserted that the premise is incorrect. See Tetreault, Seamen, Seaworthiness, and the Rights of Harbor Workers, 39 Cornell L.Q. 381, 413-14 (1954)