No. 37,522

David Seifert, *Appellee,* v. John Berkowitz, *Appellant.*

(205 P. 2d 478)

Opinion filed May 7, 1949.

*Rupert Teall,* of Wichita, argued the cause, and *Henry Lampl,* of Wichita, was on the briefs for the appellant.

*Eugene L. Pirtle,* of Wichita, argued the cause, and *Vincent F. Hiebsch, Milton Zacharias, Kenneth H. Hiebsch,* and *Joseph R. Sheedy,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, C. J.: This was an action for damages brought against a jeweler by a customer who claimed that a diamond in a ring left by him with the jeweler for remounting was substituted for a diamond of less value. A jury trial resulted in a verdict for plaintiff, upon which judgment was rendered. Defendant has appealed.

In the petition, filed November 7, 1946, plaintiff alleged that he was a resident of Marion county; that defendant was a resident of Wichita engaged in the business of buying, selling and resetting of diamonds in rings and other jewelry, and advertised himself as an expert in such work; that on September 14, 1946, he was the owner of a certain perfect white diamond of the value of $850 which was set in a ring worn by him, and that the stone needed resetting; that he went to defendant at his place of business in Wichita and requested him to have the diamond reset in the ring; that defendant took the ring and diamond, agreeing to reset it and return it to plaintiff; that about four days later defendant returned the ring to plaintiff, but in the ring he either maliciously, fraudulently, or through gross negligence set in the ring in the place of the diamond which was delivered to him by plaintiff a diamond of such inferior

quality that it was of the value of not exceeding $100; that plaintiff returned the ring and diamond to defendant and told him it was not his diamond and that apparently it was placed in the ring by mistake; that defendant, without provocation, became insulting, abusive and threatening and ordered plaintiff out of his place of business, and that defendant had either fraudulently or maliciously or by gross negligence converted plaintiff's diamond to his own use, and either has it in his possession or has sold or otherwise disposed of it; that the diamond set in the ring returned to plaintiff has no value to plaintiff, and the same was tendered into court. The prayer was for judgment against defendant for $850. The petition contained a second cause of action, making the first a part of it, and again alleged the wrongful, unlawful, fraudulent and deceitful acts or gross negligence of defendant, for which he prayed judgment for exemplary damages in the sum of $2,500. On January 13, 1947, defendant filed a motion asking that plaintiff be required to separately state and number his several causes of action in the petition under the title of "First cause of action," and to separately state and number his several causes of action in his petition under the title of "Second cause of action." This motion was denied and on March 22 defendant filed three motions. The first was to require plaintiff to elect upon alleged inconsistent remedies, a motion to strike various portions of the petition, and a motion for an order for plaintiff to make his motion more definite and certain in various particulars. These motions were denied in part for the reason that they were filed too late, after the motion to separately state and number had been argued and overruled. Defendant then demurred to the petition upon the ground that the court had no jurisdiction of the person of defendant or the subject matter of the action; that several causes of action were improperly joined, and that the petition does not state facts sufficient to constitute a cause of action. This demurrer was overruled and defendant filed an answer which consisted of a general denial.

Plaintiff's testimony need not be summarized further than to say that it fully supported the allegations of his petition. On cross-examination he was asked if he made personal property tax returns for the years 1944 and 1946. That for 1944 was not admitted in evidence, but we are told it was exhibited to the jury. It did not show any return of a diamond for taxation. The 1946 statement showed the return of a diamond of the valuation of $150. This was admitted in evidence over plaintiff's objection.

John R. Barrier, called by plaintiff, testified to his qualifications as a jeweler and that he had examined the stone in the ring returned to plaintiff by defendant. He estimated its size as 40 to 50/100 of a karat. He said it was of fair color for an average stone, but had a large imperfection of carbon in the top of it, and he placed its value at around $200.

V. J. Lanman, called by plaintiff, testified he had been in the jewelry business about fourteen years and had a jewelry store at Marion, Kan.; that he had cleaned plaintiff's diamond; that it was a stone about 55 or 60/100 of a karat; "it was a perfect blue white stone with no defects at all." In September, 1946, he was cleaning the diamond and observed that it was loose in the setting. He was not equipped to set diamonds and advised plaintiff to take it to the defendant; that shortly after that plaintiff came in with the diamond which had been returned to him by defendant; that "it isn't the original diamond I saw"; that the retail price of the original diamond was $650 to $750, while the other diamond would retail from $200 to $250.

Defendant called Cleon A. Whitney as a witness, who testified he had been in the jewelry business in Wichita since 1900 and bought and sold diamonds; that he had known defendant for twenty years and his reputation for truthfulness, honesty and integrity in his business was excellent.

Harvey A. Williams, called by defendant, testified he had been in the jewelry business in Wichita since 1933 and that he does a considerable amount of diamond setting; that he had been acquainted with defendant since he had been in business and that defendant's reputation for truthfulness, honesty and integrity among the jewelers of Wichita is the very finest. He examined the diamond which defendant had returned to plaintiff and testified that it wasn't a perfect diamond; that there was a fissure or carbon in the surface of the stone; that it was a blue white commercial stone of about 45/100 of a karat, and the fair market value of it in September, 1946, was $250. He further testified that "A perfect blue white diamond weighing 60/100 karat would retail for $420 plus twenty percent tax and two percent tax."

Ed Reimer, called by defendant, testified he was in the retail manufacturing jewelry business mounting and setting stones; that he had examined the diamond received by plaintiff from defendant: "Its weight is 42/100 karat and its color is blue white. There is a

fissure in it. I have known Mr. Berkowitz about six years. His reputation for honesty, truthfulness and integrity is good."

Defendant testified that he had lived in Wichita and had been in the jewelry business there for forty years and in his present location twenty-three years; that his business consisted of jewelry repairing, manufacturing jewelry and diamond setting; that he averaged setting four or five diamonds a day; that he first met the plaintiff several years ago and had been acquainted with his wife; that in September, 1946, plaintiff came into his store and asked him to tighten a stone in his ring, and he told plaintiff he would have to put a new head on the ring in order to make the stone safe, and that he would send the ring to him within a few days. He testified he examined the stone while plaintiff was there and saw imperfections in it consisting of a black speck with a fissure that a pin point could be put into; that he did not say anything to plaintiff about those imperfections. He contended very strongly that the diamond brought to him by the plaintiff was the same one which he reset and returned to the plaintiff. He testified to the plaintiff's coming back to his store in a few days and contending that the stone he received was not the one he had left with defendant; that in fact plaintiff was there on two different occasions, and that finally defendant told him to get out when plaintiff accused him of changing the stone. On cross-examination he testified his two sons were in business with him and for the past five or six years he had carried a stock of about $20,000. He was asked if he had not returned the merchandise stock to the assessor at a valuation of less than $3,000. There was an objection to this, and the witness was uncertain as to how his stock of merchandise had been listed. In rebuttal plaintiff called the deputy assessor, who brought records showing that defendant's stock had been listed at $2,000 in 1946 and at $2,500 in 1947. The trial court admitted this evidence as tending to impeach or discredit the testimony of the witness.

In this court appellant first contends that his demurrer to plaintiff's petition should have been sustained. We think the trial court correctly interpreted the petition as an action in tort for the wrongful taking of plaintiff's ring and converting it to his own use and substituting one of inferior value for it.

Appellant's principal argument is that the court erred in permitting counsel for plaintiff to cross-examine defendant upon the assessed value of his stock of merchandise. It must be remembered

that defendant started that practice by cross-examining the plaintiff upon the assessed value of his diamond; therefore he is not in very good position to complain of plaintiff's using similar tactics with reference to defendant's stock of merchandise. The court had admitted the evidence in both instances for the same reason, namely, on the theory that it might tend to impeach or discredit the testimony of the witnesses. We have no occasion here to write at length on the prudence or advisability of such testimony. The instructions are not brought up in the record and no complaint is made of those given, nor is there any contention that the court refused instructions requested by defendant. We assume, therefore, that the trial court in its instructions told the jury the purpose of this type of evidence and the limitations which should be applied in considering it, and that the court did so correctly.

The case was purely a fact case and there is ample evidence to suport the verdict and judgment. We find no error in the record which would justify a reversal. The judgment of the trial court therefore, is affirmed.