**William PARTRIDGE, Libelant,**

v.

**POPE AND TALBOT, INC., et al.,
Respondents.**

**No. 28973.**

United States District Court
N. D. California, S. D.

Dec. 16, 1965.

Gladstein, Andersen, Leonard & Sibbett, San Francisco, Cal., with Ewing Sibbett, San Francisco, Cal., appearing, for libelant.

Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., with Alf R. Brandin, San Francisco, Cal., appearing, for respondents.

## MEMORANDUM OPINION

WOLLENBERG, District Judge.

Libelant brought suit in Admiralty for damages for personal injuries allegedly caused by the unseaworthiness of respondent's vessel.

On January 14, 1962, the S.S. P & T Forester was lying at anchor at Roadstead Liberty Flat in New York harbor. The vessel had been under charter from the United States to respondent and was scheduled to be returned to the government. Libelant was instructed by respondent, his employer, to conduct a joint off-hire survey of the vessel. The team of surveyors consisting of three men were the libelant, the chief mate of the vessel, and a representative of the United States Government. While descending into the hold libelant fell from the ladder and sustained injuries to his right shoulder.

On October 31, 1963, libelant filed this suit for damages claiming under General Maritime Law that the vessel was unseaworthy because of inadequate lighting in the hold of the vessel. An answer was filed on behalf of respondent admitting ownership and operation of the P & T Forester, employment of libelant, but denying the allegations of the libel. Thereafter a motion for summary judgment on behalf of the respondent was denied by the court on February 17, 1965.

A pretrial conference was held on March 3, 1965, at which time it was agreed between counsel that several issues involved in this case should be tried as preliminary matters before proceeding to trial on the merits. The pretrial order sets forth these issues as follows:

(a) Was libelant guilty of laches in in the filing of his libel.

(b) Is libelant's sole remedy that provided under the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C. § 905.

(c) Was libelant at the time he was injured aboard the S.S. P & T Forester entitled to the benefit of the Maritime Warranty of unseaworthiness.

Accordingly, a hearing on the three above-mentioned preliminary issues was held before this court on August 24, 1965. Oral argument having been heard and written briefs submitted, this court makes the following combined findings of fact and conclusions of law as contemplated by Rule 52(a), Federal Rules of Civil Procedure.

■ The libelant seeks to have the court extend to him the ship owner's absolute duty to provide a seaworthy ship, a duty traditionally owed to seamen who sail with the ship and who are subjected to the perils of the sea. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1902). Influenced by a humanitarian policy, and realities of modern shipping practice, the courts have enlarged the ship owner's duty to provide a seaworthy vessel and have imposed liability on the theory of an implied warranty of seaworthiness.

The warranty has been extended over the years to members of the crew, stevedores, and shore-based workers who come aboard to perform the type of work traditionally done by seamen. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Petterson v. Alaska S. S. Co., 347 U.S. 396, 74 S. Ct. 601, 98 L.Ed. 798 (1954); McDaniel v. The M/S Lisholt, 257 F.2d 538 (2 Cir.1958); Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963).

However, the absolute liability imposed on the ship owner has been extended to shore-based workers *only if they are doing work traditionally done by seamen.* Seas Shipping Co. v. Sieracki, supra; Pope & Talbot v. Hawn, supra.

■■ A close study of the cases in the area discloses that the basis of the decisions "does not rest in the name given to the person doing the work—seaman, longshoreman or repairman—but rather the nature of the work in which he is engaged." West v. United States, 143 F.Supp. 473 (E.D.Penn. 1956). Broadly stated the principle of law laid down in the aforesaid cases is that if a person is engaged in the "service" of the ship, and the service is one traditionally performed by seamen, then the warranty of seaworthiness runs to that person. See Guerrini v. United States, 167 F.2d 352 (2d Cir.1948); Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1951); Berge v. National Bulk Carriers Corp., 251 F.2d 717 (2nd Cir.1957). The issue here presented is whether libelant as a professional surveyor in an off-hire survey was performing services traditionally performed by seamen so that libelant is entitled to the ship owner's warranty of seaworthiness. Libelant herein was employed by Pope and Talbot, Inc. in a shoreside administrative capacity from February, 1945 through March, 1962, which employment involved professional surveys of vessels. At the time of the accident libelant pursuant to respondent's instructions, was involved in an off-hire survey of the vessel to determine what, if any, deterioration in the vessel's condition due to causes other than ordinary wear and tear, had occurred while the vessel was under charter to respondent. Libelant was part of a team of surveyors which included the chief mate of the vessel and a representative of the U. S. Government.

■ It is true that a seaman (e. g. chief mate or master) may be competent

to perform the physical acts of a surveyor. It is also probable that on some vessels certain crew members conduct surveys to determine damage. However, libelant in this case was employed to prepare detailed off-hire survey which by its nature demanded his particular expertise and experience as a professional surveyor. He must be acquainted with the modern building structure of vessels. He must be able to translate his findings into the professional language of a surveyor. He is not hired merely to file a report. His value depends on the credibility given to his findings by interested parties.[1] The greatest credibility is given customarily to an independent surveyor[2] who has built up a reputation for integrity and impartiality. The report of a crew member would lack both the particular expertise and degree of credibility of a professional surveyor. The libelant herein, like the surveyor in Royston v. Pacific Far East Lines, 9 Cir., 190 F.Supp. 450 (survey by independent surveyor in accord with Coast Guard regulations requiring a certification of conditions) was engaged in a survey which required special skills and professional status which have never been attributed to seamen.

Thus it is the special nature of the work being performed by the libelant which takes him out of the class of persons to whom the warranty of complete seaworthiness runs.

Because of the above findings and conclusions of law are dispositive of the case, the court need not consider further the issue of laches and exclusive remedy set out in the pretrial order of preliminary issues.

Judgment is hereby ordered for respondent, together with costs.

---

**1.** See generally testimony of expert witness Walsh—Partial Transcript pp. 10–23.

---

**2.** Although libelant in this case was an employee of the ship owner, he still maintained his status as an independent surveyor while making the off-hire survey.