**VIRGINIA NATIONAL BANK, Administrator c.t.a. of the Estate of Ernest B. Edkin, Deceased, Plaintiff,**

v.

**CENTRAL GULF STEAMSHIP CORPORATION et al., Defendants.**

Civ. A. No. 64–70–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Dec. 7, 1970.

Howell, Anninos & Daugherty, Henry E. Howell, Jr., Norfolk, Va., for plaintiff.

Seawell, McCoy, Winston & Dalton, R. M. Hughes, III, Norfolk, Va., for defendants.

## OPINION AND ORDER

KELLAM, District Judge.

In this action the Administrator of the Estate of Ernest B. Edkin seeks to recover of defendant on an allegation of negligence and a breach of the warranty of seaworthiness.

Defendant moves for summary judgment on the issue of unseaworthiness asserting that at the time of the accident and injury plaintiff's decedent was not entitled to such a warranty.

At the time of the accident and injury plaintiff's decedent, a shore-based marine surveyor, was aboard the defendant's vessel in the process of inspecting the holds of the vessel to determine if they were in satisfactory condition to take the intended cargo.

Initially, liability for unseaworthiness extended only to "seamen." The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1902). The Supreme Court in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1945), extended the blanket of the warranty of seaworthiness to include longshoremen on the theory that he was "doing a seaman's work and incurring a seaman's hazards." Id. at 99, 66 S.Ct. at 880. Subsequently in Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), the Supreme Court extended the warranty of seaworthiness to include shore-based workers not directly engaged in loading and unloading the vessel as had been the case in *Sieracki*. The Court in *Hawn* stated:

> It is pointed out that Sieracki was a "stevedore." Hawn was not. And Hawn was not loading the vessel. On these grounds we are asked to deny Hawn the protection we held the law gave Sieracki. These slight differences in fact cannot fairly justify the distinction urged as between the two cases. Sieracki's legal protection was not based on the name "stevedore" but on the type of work he did and its relationship to the ship and to the historic doctrine of seaworthiness. The ship on which Hawn was hurt was being loaded * * * Hawn was put to work * * * so that the loading could go on at once. Id. at pp. 412–413, 74 S.Ct. at pp. 206–207.

In the instant case Edkin was put to work so that the loading of the GREEN HARBOR could proceed. Frank William Waukhope, the resident surveyor for the National Cargo Bureau in Norfolk, testified that a marine surveyor—the vast majority of whom have a Master's License—checks to see that the vessel is clean and fit to take the cargo intended; that he often returns to the vessel to see that the cargo is being stowed properly and to see that incompatible items are not being stowed together. It would appear that further evidence along these lines adduced at trial could put the work being done by Edkin within the scope of "that which the crew of a vessel is accustomed to perform," and hence come within the aegis of the warranty of seaworthiness.

With *Sieracki* and *Hawn* as starting points, the most prominent factor affecting the applicability of the seaworthiness doctrine has been the nature of the work performed by the injured party. Today the warranty of seaworthiness appears to extend to other workmen performing services on or about, and for the direct benefit of, the ship, at the owner's request or with the owner's permission, regardless of by whom employed.

To sustain defendant's motion would be to hold as a matter of law that marine surveyors do not come within the scope of the warranty of seaworthiness. I believe this would contravene the spirit of *Sieracki* and *Hawn* and of other recent court holdings.

In Caudill v. Victory Carriers, 149 F. Supp. 11 (E.D.Va.1957), Judge Hoffman wrote:

The gradual expansion of the doctrine pronounced in Seas Shipping Co. v. Sieracki * * *, wherein the Court held that the shipowner's obligation of seaworthiness extends to longshoremen injured while doing the ship's work aboard even though employed by an independent stevedoring contractor whom the owner hired to load or unload the ship, is apparent. Petterson,[2] supra, is a typical example. Ross v. S. S. Zeeland, 4 Cir., 240 F.2d 820, affords similar protection to a watchman employed by a Port Service. Carpenters, employed by independent contractors, fall within the same classification as to employment activities aboard ship. The day may come, if it has not already, when the doctrine of seaworthiness will be extended to all business invitees aboard ship, for Sieracki holds that liability arises as an incident of performing the ship's service with the owner's consent. At p. 15.

The following year, in Amato v. United States, 167 F.Supp. 929 (S.D.N.Y.1958), that Court did in fact state as dictum that all "business invitees" were entitled to the warranty of seaworthiness.

Pinion v. Mississippi Shipping Co., 156 F.Supp. 652, 657 (E.D.La.1957), held that a shipyard worker inspecting tanks in a vessel to discover leaks which would require repair was doing work which was traditionally done by seamen. The evidence there established that the chief officer of the vessel had engaged in the very same work in the course of his duties as an officer of the vessel.

In Matherne v. Superior Oil Co., 207 F.Supp. 591, 594 (E.D.La.1962), the Court wrote:

Even though Matherne was a land-based worker [he was a truck driver] and only temporarily on Superior's barge, and was engaged in furthering the purpose of a vessel on navigable water, namely, transporting a cargo of pipe, at the time of his death. * * Matherne's work was incident to performing the service of the ship and he was, for all practical purposes, entitled to protection as a seaman.

Finally, in Noel v. Isbrandtsen Co., 179 F.Supp. 325, 328 (E.D.Va.1959), Judge Hoffman was confronted with a situation involving a marine surveyor and a ship out of navigation. While not extending the warranty of seaworthiness to the plaintiff because of the latter factor (being out of navigation), as regarding the former factor (plaintiff's being a marine surveyor), he said in dictum: "Libellant cannot support his claim under the doctrine of unseaworthiness, (because the vessel was not in navigation) and this is true even though we assume that libellant was, at least in part, doing work traditionally done by seamen."

Concerning the application and extension of *Sieracki* and *Hawn, see, also* Sulovitz v. United States, 64 F.Supp. 637, 640 (E.D.Pa.1945); Eagle Indemnity Co., to Use of Beall v. United States Lines, 86 F.Supp. 949, 953 (D.Md. 1949); Bochantin v. Inland Waterways Corp., 96 F.Supp. 234 (E.D.Mo.1951); Giaraffa v. Moore-McCormack Lines, 270 F.Supp. 342, 345 (S.D.N.Y.1967).

**2.** Alaska SS Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, affirming per curiam Petterson v. Alaska SS Co., 205 F.2d 478 (9th Cir.)

While there are occupations which have been afforded the warranty of seaworthiness as a matter of law and occupations which have been denied the warranty as a matter of law, *cf.* Norris, The Law of Seamen § 2, it should be reiterated that the test here involves whether or not the plaintiffs decedent was doing work normally done by a seaman. This is a question which should be left undecided until all of the evidence has been presented. Hill v. Diamond, 203 F.Supp. 877, 879 (E.D.Va.1962).

It may well be that the evidence presented at trial will make the question of Edkins being protected by the warranty of seaworthiness a matter of law. Lawrence v. Norfolk Dredging Co., 319 F.2d 805 (4th Cir. 1963). It is not every case, however, where the question of ones being a seaman is considered a matter of law. The United States Supreme Court in Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 374, 77 S.Ct. 415, 417, 1 L.Ed.2d 404 (1957) held:

> We believe, however, that our decision in South Chicago Coal & Dock Co. v. Bassett [309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940)], has not been fully understood. Our holding there that the determination of whether an injured person was a "member of a crew" is to be left to the finder of fact meant that juries have the same discretion they have in finding negligence or any other fact. The essence of this discretion is that a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate.

*See, also,* Grimes v. Raymond Pile Co., 356 U.S. 252, 253, 78 S.Ct. 687, 2 L.Ed. 2d 737 (1958) ; McKie v. Diamond Marine Co., 204 F.2d 132, 136 (5th Cir. 1953) ; Braniff v. Jackson Avenue-Gretna Ferry, Inc., 280 F.2d 523 (5th Cir. 1960) ; Producer's Drilling Co. v. Gray, 361 F.2d 432, 437 (5th Cir. 1966).

In Biggs v. Norfolk Dredging Co., 360 F.2d 360, 364 (4th Cir. 1966), the Court of Appeals, in holding that summary judgment should not have been granted, said:

Moreover, summary judgment was inappropriate, we think, because the supporting papers did not exclude the existence of a genuine issue on the decisive fact of whether the plaintiffs were seamen, or acting as seamen, and so possessed of general maritime or Jones Act rights and remedies. At 362.

\* \* \* \* \* \*

We do not say that either plaintiff here is in actuality a Jones Act or *Sieracki* seaman. We only say he should be heard to prove his real character.

I am not unmindful that Partridge v. Pope & Talbot, 257 F.Supp. 456 (N.D. Cal.1965) and Royston v. Pacific Far East Lines, Inc., 190 F.Supp. 450 (N.D. Cal.1960), have held that a marine surveyor is not covered by the warranty of seaworthiness, but I feel the issue must be determined from all of the evidence in the case.

Defendant's motion for summary judgment is denied, and the issue of whether or not Edkin should be entitled to the warranty of seaworthiness will be examined further after the presentation of all of the evidence in the case.