# POPE & TALBOT, INC. *v.* HAWN ET AL.

No. 13.   Argued October 12, 1953.—Decided December 7, 1953.

*Mark D. Alspach* argued the cause for petitioner. With him on the brief was *Thomas E. Byrne, Jr.*

*Charles Lakatos* argued the cause for Hawn, respondent. With him on the brief was *Samuel H. Landy.*

*Thomas F. Mount* argued the cause for Haenn Ship Ceiling & Refitting Corp., respondent. With him on the brief was *Joseph W. Henderson.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The respondent Charles Hawn sustained severe physical injuries when he slipped and fell through an uncovered hatch hole on the petitioner Pope & Talbot's vessel. The ship was then berthed at a pier located in Pennsylvania waters of the Delaware River. Loading of the vessel with grain for a voyage had been temporarily interrupted to make minor repairs on the grain loading equipment. Hawn was doing carpentry work on this equipment to make it spread the grain evenly and thereby balance the ship's load to make the coming voyage safer. He was not an employee of Pope & Talbot's but of the respondent Haenn Ship Ceiling and Refitting Company which had been hired to make these repairs. Hawn brought this civil action in a United States District Court to recover damages for his injuries. His complaint charged that his injuries resulted from the vessel's unseaworthiness and from Pope & Talbot's negligence. In answering, Pope & Talbot denied both charges and set up contributory negligence as a defense to each. In addition, Pope & Talbot brought in Hawn's employer Haenn as a third party defendant, alleging that Haenn's negligence had caused Hawn's injury and claiming recovery over against

Haenn by way of contribution or indemnity. A jury found that the ship was unseaworthy, that Pope & Talbot had been negligent, that Haenn had been negligent and that Hawn's own negligence had contributed 17½% of his damages. On this basis, the court entered judgment for Hawn against Pope & Talbot for $29,700, 17½% less than the $36,000 at which the jury had fixed his damages. A judgment for contribution by Haenn to Pope & Talbot was also entered. 99 F. Supp. 226, 100 F. Supp. 338. The Court of Appeals affirmed Hawn's judgment against Pope & Talbot. It reversed the judgment of contribution against Haenn. 198 F. 2d 800. This Court granted certiorari. 345 U. S. 990.

The Court of Appeals reversed the judgment for contribution by Haenn on the basis of our holding in *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.*, 342 U. S. 282. In that case we held that contribution could not be exacted under circumstances like those here involved. For that reason we affirm the Court of Appeals reversal of the District Court's judgment against Haenn and proceed to a consideration of the several questions presented by Pope & Talbot as grounds for attack on Hawn's judgment.

*First.* Petitioner urges that the jury finding of contributory negligence should have been accepted as a complete bar to Hawn's recovery. The contention appears to rest on two separate bases: (a) Admiralty has not developed any definite rule as to the effect of contributory negligence, and therefore the common-law rule under which contributory negligence bars recovery should govern in admiralty, (b) Pennsylvania law controls this case and under that state's law any contributory negligence of an injured person is an insuperable bar to his recovery.

(a) The harsh rule of the common law under which contributory negligence wholly barred an injured person

from recovery is completely incompatible with modern admiralty policy and practice. Exercising its traditional discretion, admiralty has developed and now follows its own fairer and more flexible rule which allows such consideration of contributory negligence in mitigation of damages as justice requires.[1] Petitioner presents no persuasive arguments that admiralty should now adopt a discredited doctrine which automatically destroys all claims of injured persons who have contributed to their injuries in any degree, however slight.

(b) Nor can we agree that Hawn's rights must be determined by the law of Pennsylvania, under which, it is said, any contributory negligence would bar all recovery in this personal injury action. True, Hawn was hurt inside Pennsylvania and ordinarily his rights would be determined by Pennsylvania law. But he was injured on navigable waters while working on a ship to enable it to complete its loading for safer transportation of its cargo by water. Consequently, the basis of Hawn's action is a maritime tort,[2] a type of action which the Constitution has placed under national power to control in "its substantive as well as its procedural features . . . ." *Panama R. Co.* v. *Johnson,* 264 U. S. 375, 386. And Hawn's complaint asserted no claim created by or arising out of Pennsylvania law. His right of recovery for unseaworthiness and negligence is rooted in federal maritime law. Even if Hawn were seeking to enforce a state created remedy for this right, federal maritime law would be controlling. While states may sometimes supplement

---

[1] *E. g., The Max Morris,* 137 U. S. 1; *The Arizona* v. *Anelich,* 298 U. S. 110, 122, and cases cited; *Socony-Vacuum Oil Co.* v. *Smith,* 305 U. S. 424, 428–429; *Jacob* v. *New York City,* 315 U. S. 752, 755; and compare *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239, 244–245, with *Belden* v. *Chase,* 150 U. S. 674.

[2] *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 61–63.

federal maritime policies,[3] a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court. These principles have been frequently declared and we adhere to them. See *e. g., Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239, 243–246, and cases there cited. *Caldarola* v. *Eckert,* 332 U. S. 155, does not support the contention that a state which undertakes to enforce federally created maritime rights can dilute claims fashioned by federal power, which is dominant in this field.

Another argument is that Pennsylvania law must govern here because the District Court's jurisdiction was rested on diversity of citizenship under 28 U. S. C. § 1332.[4] For this contention the principle established in *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, is invoked. That case decided that federal district diversity courts must try state created causes of action in accordance with state laws. This ended a long-standing federal court practice under which the outcome of lawsuits to enforce state created causes of action often depended on whether they were tried in a state courthouse or a federal courthouse. *Erie R. Co.* v. *Tompkins* was thus designed to ensure that litigants with the same kind of case would have their rights measured by the same legal standards of liabil-

---

[3] See *e. g., Just* v. *Chambers,* 312 U. S. 383, 387–392; *Kelly* v. *Washington,* 302 U. S. 1, 13.

[4] The complaint shows diversity which is sufficient to support jurisdiction of the District Court. The complaint also shows that the claim rests on a maritime tort which under the Constitution is subject to dominant control of the Federal Government. In this situation we need not decide whether the District Court's jurisdiction can be rested on 28 U. S. C. § 1331 as arising "under the Constitution, laws or treaties of the United States." See *Doucette* v. *Vincent,* 194 F. 2d 834, and *Jansson* v. *Swedish American Line,* 185 F. 2d 212. Cf. *Jordine* v. *Walling,* 185 F. 2d 662.

ity. It appears to be contended here, however, that one injured on navigable waters who sues in federal court under diversity jurisdiction somehow jeopardizes his right to have as full a recovery as he otherwise would. It is certainly contended that one who sues on the "law side" of the docket has much less chance to recover than one who sues on the "admiralty side." Thus we are asked to use the *Erie-Tompkins* case to bring about the same kind of unfairness it was designed to end. Once again, the substantial rights of parties would depend on which courthouse, or even on which "side" of the same courthouse, a lawyer might guess to be in the best interests of his client. We decline to depart from the principle of equal justice embodied in the *Erie-Tompkins* doctrine. Of course the substantial rights of an injured person are not to be determined differently whether his case is labelled "law side" or "admiralty side" on a district court's docket. *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85, 88–89.[5] The District Court and Court of Appeals correctly refused to deny Hawn's federal right of recovery by applying the Pennsylvania contributory negligence rule.

*Second.* Haenn has been making compensation payments to Hawn because of obligations imposed by the Longshoremen's and Harbor Workers' Compensation Act. 44 Stat. 1424, 33 U. S. C. § 901 *et seq.* Hawn has agreed to refund these payments to his employer out of his Pope & Talbot recovery. Pope & Talbot contends that the judgment against it should be reduced by this amount.

---

[5] Of a somewhat similar contention this Court said that it did not regard certain words in the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, "as meaning that the seaman may have the benefit of the new rules if he sues on the law side of the court, but not if he sues on the admiralty side. Such a distinction would be so unreasonable that we are unwilling to attribute to Congress a purpose to make it." *Panama R. Co.* v. *Johnson,* 264 U. S. 375, 391.

It points out that Hawn's verdict includes sums for past loss of wages and medical expenses which it is argued were the very items on account of which Hawn's employer paid him. Consequently Pope & Talbot says that if Hawn keeps the money he will have a double recovery and that to allow him to repay Haenn would give an unconscionable reward to an employer whose negligence contributed to the injury. A weakness in this ingenious argument is that § 33 of the Act has specific provisions to permit an employer to recoup his compensation payments out of any recovery from a third person negligently causing such injuries. Pope & Talbot's contention if accepted would frustrate this purpose to protect employers who are subjected to absolute liability by the Act. Moreover, reduction of Pope & Talbot's liability at the expense of Haenn would be the substantial equivalent of contribution which we declined to require in the *Halcyon* case.

*Third.* We are asked to reverse this judgment by overruling our holding in *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85. Sieracki, an employee of an independent stevedoring company, was injured on a ship while working as a stevedore loading the cargo. We held that he could recover from the shipowner because of unseaworthiness of the ship or its appliances. We decided this over strong protest that such a holding would be an unwarranted extension of the doctrine of seaworthiness to workers other than seamen. That identical argument is repeated here. We reject it again and adhere to *Sieracki.* We are asked, however, to distinguish this case from our holding there. It is pointed out that Sieracki was a "stevedore." Hawn was not. And Hawn was not loading the vessel. On these grounds we are asked to deny Hawn the protection we held the law gave Sieracki. These slight differences in fact cannot fairly justify the distinction urged as between the two cases. Sieracki's

legal protection was not based on the name "stevedore" but on the type of work he did and its relationship to the ship and to the historic doctrine of seaworthiness. The ship on which Hawn was hurt was being loaded when the grain loading equipment developed a slight defect. Hawn was put to work on it so that the loading could go on at once. There he was hurt. His need for protection from unseaworthiness was neither more nor less than that of the stevedores then working with him on the ship or of seamen who had been or were about to go on a voyage. All were subjected to the same danger. All were entitled to like treatment under law.

*Fourth.* A concurring opinion here raises a question concerning the right of Hawn to recover for negligence—a question neither presented nor urged by Pope & Talbot. It argues that the *Sieracki* case, by sustaining the right of persons like Hawn to sue for unseaworthiness, placed them in the category of "seamen" who cannot, under *The Osceola,* 189 U. S. 158, maintain a negligence action against the shipowner. *The Osceola* held that a crew member employed by the ship could not recover from his employer for negligence of the master or the crew member's "fellow servants." Recoveries of crew members were limited to actions for unseaworthiness and maintenance and cure. But Hawn was not a crew member. He was not employed by the ship. The ship's crew were not his fellow servants. Having no contract of employment with the shipowner, he was not entitled to maintenance and cure. The fact that *Sieracki* upheld the right of workers like Hawn to recover for unseaworthiness does not justify an argument that the Court thereby blotted out their long-recognized right to recover in admiralty for negligence.[6]

---

[6] Illustrative of the unbroken line of federal cases holding that persons working on ships for independent contractors or persons rightfully transacting business on ships can recover for damages due

Neither the holding nor what was said in *Sieracki* could support such a contention. In fact, the dissent in *Sieracki* appears to have been predicated on an objection to adding unseaworthiness to the existing right to recover for negligence. It would be strange indeed to hold now that a decision which over the dissent recognized unseaworthiness as an additional right of persons injured on shipboard had unwittingly deprived them of all right to maintain actions for negligence.

*Affirmed.*

MR. JUSTICE FRANKFURTER, concurring.

We are told that Hawn's "right of recovery for unseaworthiness and negligence is rooted in federal maritime law." No case or student of admiralty is cited in support of this statement.

In 1903, this Court in *The Osceola,* 189 U. S. 158, recognized for the first time the right of crew members to recover for the unseaworthy condition of their ship and denied a right of recovery against the shipowner for negligence. Not until 1920, and then by Act of Congress, 46 U. S. C. § 688, were seamen given the alternatives of suing for negligence or unseaworthiness. See *Pacific S. S. Co.* v. *Peterson,* 278 U. S. 130, 138. As for longshoremen, they could sue their own employer for negligence in not providing safe conditions of work. And in 1926 this Court extended to them the additional benefits of the Jones Act, by construing "seaman" to include a longshore-

---

to shipowners' negligence are: *Leathers* v. *Blessing,* 105 U. S. 626 (1882); *The Max Morris,* 137 U. S. 1 (1890); *Gerrity* v. *The Bark Kate Cann,* 2 F. 241 (1880); *The Helios,* 12 F. 732 (1882), decision by Judge Addison Brown; *Grays Harbor Stevedore Co.* v. *Fountain,* 5 F. 2d 385 (1925); *Tide Water Associated Oil Co.* v. *Richardson,* 169 F. 2d 802 (1948); *Brady* v. *Roosevelt S. S. Co.,* 317 U. S. 575, 577 (1943). See also cases collected in 44 A. L. R. 1025–1034.

man. *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50. Congress, preferring a different mode of recovery for longshoremen than for seamen, displaced their right to sue their employer for negligence by a workmen's compensation act applicable solely to longshoremen, 33 U. S. C. § 901 *et seq.* Like other business invitees, such as passengers and freight consignees, longshoremen could also sue the shipowner for negligence. Then on April 22, 1946, this Court in *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85, for the first time extended to longshoremen the right to recover for unseaworthiness from the owner of the ship. The decision was based on the fact that longshoremen were doing seamen's work and that therefore they should be entitled to a seamen's remedy. Until today, this Court has never held that longshoremen have the alternative rights of action for negligence or unseaworthiness which the Jones Act gave to crew members. This summary history hardly shows such deep roots of the alternative rights of recovery that this Court should needlessly decide that such rights exist.

I would affirm the judgment of the Court of Appeals, because the separate finding that the ship was unseaworthy supports recovery.[1] This, of course, assumes Hawn was the kind of worker who we held in *Sieracki* could recover for unseaworthiness.

The right of seamen to recover for unseaworthiness is peculiarly a cause of "admiralty and maritime jurisdiction," 1 Stat. 73, 77. The right is in the nature of liability without fault for which contributory negligence is not a bar to recovery, although it may be relevant in assessing the damages. *Seas Shipping Co.* v. *Sieracki, supra. Erie*

---

[1] No objection was raised at any point in this case to the trial by jury, so the question is not before us whether the plaintiff was entitled to a jury in a suit based on both maritime and common-law causes of action.

*R. Co.* v. *Tompkins,* 304 U. S. 64, is irrelevant in that unseaworthiness is a federally created right, so state law on a state cause of action is not an issue. We should not commingle federal admiralty and state common-law and should not engraft onto the federally created right to recover for unseaworthiness a common-law defense foreign to that right.

If negligence were the only count in the complaint and the jury found it, or if the jury had found the ship seaworthy but sustained the negligence claim, different considerations would come into play not now before us. The opinion below indicates that the application of Pennsylvania law would have completely barred recovery, since the plaintiff was contributorily negligent. Therefore, to recover solely on the basis of Pope and Talbot's negligence, Hawn would have to rely on a federal maritime cause of action for negligence to which contributory negligence is not a bar. Whether such a cause of action would be available in this case is a difficult question which should not be decided here, since its disposition is unnecessary in view of the separate finding of unseaworthiness.

Both before and after this Court's decision in *The Osceola,* recognizing the right of crew members to recover for unseaworthiness, longshoremen recovered for negligence—often described as "negligence of the ship"—as did other business invitees. Compare *Leathers* v. *Blessing,* 105 U. S. 626, with *The Max Morris,* 137 U. S. 1. Although these were cases where the elements of unseaworthiness were probably present, courts rarely used that term. The plaintiff's default in such cases did not bar recovery altogether, however, but rather served to reduce the damages to be awarded.

In *Sieracki,* this Court assimilated longshoremen to seamen and held that they could recover for unseaworthiness. That decision inevitably raises doubts whether longshoremen are still entitled to recover against a shipowner for

negligence, except insofar as a state right of action for negligence, to which the state rule on contributory negligence would be applicable, is enforceable. Cf. *The Hamilton,* 207 U. S. 398. For *The Osceola,* in recognizing crew members' right of action for unseaworthiness, also held that they had no such right against the shipowner for negligence.[2] Did *Sieracki,* in holding that longshoremen laboring like seamen of old in the "service of the ship" were entitled to recover for unseaworthiness, leave them also with the negligence cause of action which *The Osceola* denied to seamen?[3]

On the one hand, it may be urged that *Sieracki* broadened the rights of shore workers; it gave them a seaman's status without depriving them of the right of action they had before they attained that status. On the other, it may be urged with equal reason that a longshoreman should not be able to "play it both ways": be entitled, that is, to a seaman's remedy for unseaworthiness and also enjoy recovery from the shipowner for negligence which, prior to the Jones Act, was denied to a seaman. He would thus have available two non-statutory remedies to recover damages for his injuries, while the crew mem-

---

[2] Although this holding was based in part on the fellow-servant rule, it went further. For it stated that while it was doubtful whether the master of the ship was a fellow servant, the crew member could not recover against the owner for the master's negligence. *The Osceola's* holding that negligence is not available as a cause of action against the shipowner has been reaffirmed by this Court in *Mahnich* v. *So. S. S. Co.,* 321 U. S. 96, and *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372.

[3] The *Sieracki* case itself was wholly unconcerned with a stevedore's right to recover for negligence of the shipowner and also hold him for unseaworthiness. There is not the remotest intimation in either the majority or the minority opinion that any thought was given to the question whether the stevedore was to have these two rights, although a member of the crew was denied them prior to the Jones Act and the Jones Act does not apply to longshoremen.

ber, the true "ward of admiralty," has only one. And the fact that Congress in the Jones Act has given crew members a statutory cause of action for negligence hardly justifies this Court's according longshoremen alternative remedies, any more than we should now define the crew members' rights as including compensation under the Longshoremen's and Harbor Workers' Compensation Act.

Since unseaworthiness affords longshoremen recovery without fault and has been broadly construed by the courts, e. g., *Mahnich* v. *So. S. S. Co.*, note 2, *supra,* it will be rare that the circumstances of an injury will constitute negligence but not unseaworthiness. Even if such a case should arise, the longshoreman, were he barred from suing the shipowner for negligence, has available the statutory remedy against his employer which Congress has given him in the Longshoremen's and Harbor Workers' Compensation Act.

But the practical importance of the question is no measure of its difficulty. It raises subtle issues of such judicial lawmaking as is the main source of maritime law. We ought not to embarrass future answers to such a question by premature pronouncements, especially without the benefit of mature submissions by counsel.

Since the *Erie* problem is not here, it is also irrelevant to decide what remedy a state court could give or decline to give. We should not even imply that if suit had been brought in a state court and the Supreme Court of Pennsylvania had held that its law prevented a contributorily negligent plaintiff from recovering in Pennsylvania courts, we would overrule that judgment and require the state courts to provide a remedy.

Of course, when state courts purport to enforce federally created rights, they must apply the contents of those rights as determined by this Court. *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239. But whether it is federal law that a state court is enforcing or the state fails

to afford a remedy in its courts is too complicated a question to be passed upon when not before us. The answer depends much too much on what the state court decides. *E. g., Caldarola* v. *Eckert,* 332 U. S. 155.

MR. JUSTICE JACKSON, with whom MR. JUSTICE REED and MR. JUSTICE BURTON join, dissenting.

It may be conducive to a dispassionate consideration of the law of this case to remind ourselves that the plaintiff below unquestionably was covered by the Longshoremen's and Harbor Workers' Compensation Act. Nobody questions his right to all that other injured harbor workers usually receive for like injury or to what this plaintiff would receive for the same injuries if suffered under slightly different circumstances. What is in issue here is a bonus recovery over and above the statutory scale of compensation that Congress has established for injured harbor workers in general, which this plaintiff claims only because of special circumstances said to create a liability by a third party, a bareboat charterer we will refer to as the shipowner.

This decision seems to me to so confuse maritime law with common and statutory tort law as to destroy the integrity of the former as a separate system based on the peculiarities and risks of seagoing labor.

## 1. DIVERSITY OF CITIZENSHIP AND PENNSYLVANIA STATE LAW.

This case was instituted on the law side of federal district court, the complaint specifically alleging that "jurisdiction is based on diversity of citizenship" and pleading the other requisites of that jurisdiction. After amendment, the complaint alleged both ordinary common-law negligence and lack of seaworthiness against the shipowner. As I shall presently point out, the allegations of negligence could not have been an invocation of the

Federal Jones Act, which affords to seamen a federal remedy for negligence. It appears to have been an invocation of the negligence law of the Commonwealth of Pennsylvania, in the territorial waters of which the injury was sustained. This may have been permissible because § 9 of the Judiciary Act of 1789, 1 Stat. 76–77, gave the District Courts of the United States "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . ; saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it . . . ." Under this reservation it would appear that there is considerable room for application of state law, although I do not undertake to guess how much. Cf. *Caldarola* v. *Eckert*, 332 U. S. 155.

This being the form of action, the plaintiff had a jury trial. The court's instructions scrambled common-law negligence doctrines with admiralty principles of indemnity for unseaworthiness.

But, as a diversity action based on the tort law of Pennsylvania, plaintiff's case must fail because the jury, in answer to special interrogatories, reported that the plaintiff himself was guilty of negligence which contributed 17½% to his injuries. Under *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, the law of the state of injury would apply to the case and, under Pennsylvania law, contributory negligence defeats recovery. Therefore, some other basis must be found to sustain the verdict.

### 2. ACTION FOR NEGLIGENCE.

The failure of maritime law to afford a remedy for negligence, *The Osceola*, 189 U. S. 158, was overcome by the Federal Jones Act, 46 U. S. C. § 688 *et seq.*, which provides an action for negligence with jury trial. But this plaintiff's difficulties, under this Act, were so formidable that his counsel makes no claim that the recovery can rest upon it. Notwithstanding this, case after case

which was decided under the Jones Act is cited by the Court today, which implies that the Court relies on the Jones Act to help out in some way toward supporting the recovery here. But that Act gives a right of action only against the employer, and this plaintiff was not employed by the shipowner. Moreover, the Jones Act gives its right of action only to seamen, and this claimant is not a seaman.

It is clear that Congress provided the compensation remedy, not the Jones Act remedy, for such a case as this. In *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50, this Court attempted to allow recovery by a long-shoreman against his employer under the Jones Act. Immediately Congress passed the Longshoremen's and Harbor Workers' Compensation Act, which made exclusive, as against the employer, the compensation remedy it conferred on longshoremen and harbor workers. So the Jones Act is not available to support a recovery against this plaintiff's employer because of provisions of the compensation Act, nor against the shipowner because the Jones Act makes no one liable who is not an employer. Therefore, as a tort action this case cannot be sustained under the Federal Act.

If plaintiff was invoking Pennsylvania negligence law—the ordinary law of the business invitee—he cannot recover because he was contributorily negligent. The only possible basis for recovery is a maritime tort. The question is a tricky and difficult one, resurrecting old cases which involved many aspects of maritime law no longer in force. In any event, the charge below so scrambled two theories of recovery that the jury could not possibly have had a fair understanding of the law of the case. The jury was instructed on the one hand that negligence was not necessary to recovery because of the unseaworthiness theory and on the other that negligence itself was a basis for recovery. The least petitioner was entitled

to was a submission which would eliminate the confusing doctrine of liability without fault not applicable to the case.

### 3. INDEMNITY FOR UNSEAWORTHINESS.

Along with the claim of common-law negligence there was submitted to the jury in this case, as an alternative basis of liability, the claim that the ship was unseaworthy. It is true that a seaman has a right to indemnity or compensatory damages where he can show injury from unseaworthiness of the ship.

As was explained in *The Osceola, supra,* at 171, this was adopted into our maritime law from British legislation, wherein "in every contract of service, express or implied, between an owner of a ship and the master or any seaman thereof, there is an obligation implied that all reasonable means shall be used to insure the seaworthiness of the ship before and during the voyage." This obligation was adopted into American admiralty law as a warranty of seaworthiness, of which the owner is not relieved by exercise of due diligence and which rests on wholly different principles from those of negligence. *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96, 100. But this case was begun, tried, submitted and decided as a negligence action, while it is sustained here on an admiralty doctrine of liability for breach of warranty which does not at all depend upon negligence.

The principal reliance of the Court is on *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85. That decision advanced a novel holding that the traditional warranty of seaworthiness extended not only to seamen but also to longshoremen. This was a virtual repetition of the Court's earlier effort in the *International Stevedoring Co.* case, *supra,* to give seamen's remedies to longshoremen, an effort which was promptly rebuffed by Congress when it enacted the Longshoremen's and Harbor Workers' Compensation Act

to preserve the traditional distinction. But a much greater departure than that which Congress rejected must be taken here if the warranty of seaworthiness is to be further expanded to sustain this recovery. There may be some logic in saying that when a longshoremen or stevedore is brought aboard to load a ship, the ship should be fit for sailing. But it seems to me that the extension of this implied warranty to a repair crew which works for an independent contractor is unjustified. The Court can cite no authority for such a holding, and I think there is no logic in it.

This claimant was a carpenter in the employ of a ship repairing company. That company had a contract to make certain repairs aboard this ship and the claimant was sent aboard by his employer, under whose direction he worked. It does not seem to me that one who hires a contracting firm to put his ship in seaworthy condition guarantees that it is in seaworthy condition before the work starts. If everything were shipshape, he would not need the services of the repairmen.

I think that the expansion of the warranty of seaworthiness from a seaman to a repairman is illogical, contrary to any decisional law and not consistent with the scheme of Congress to maintain a sharp distinction between the seafaring man and the harbor worker.

From ancient times admiralty has given to seamen rights which the common law did not give to landsmen, because the conditions of sea service were different from conditions of any other service, even harbor service. The seaman on board a merchant ship ties his fate to that of the ship and joins its separate community for the voyage. Under earlier conditions seagoing labor was extremely hard. Voyages were long, tedious and treacherous. Shipwreck, stranding, capture by pirates, fire, and other eventualities threatened. Scurvy was common, and the ships were little prepared to combat disease. Discipline

was harsh and cruel, and savage punishments were inflicted. Poor food, cramped quarters, long hours and complete subjection to the will of the master was the rule. While his lot has been ameliorated, even under modern conditions the seagoing laborer suffers an entirely different discipline and risk than does the harbor worker. His fate is still tied to that of the ship. His freedom is restricted. He is under an unusual discipline and is dependent for his food, medicine, care and welfare upon the supplies of the ship. Contrast the lot of this plaintiff who lived at home, was free to leave his employment, took no risks of the sea and had no different condition or hazard attached to his employment than would have attached to a carpentry job in a building ashore.

That the sharp differentiation Congress made in the rights of seamen as contrasted with harbor workers has a basis in differences in risk and working conditions will be apparent from a study of 46 U. S. C., c. 18, which governs merchant seamen. I point out some of the most obvious respects in which this claimant's position as a land-based laborer, free to bargain, strike or quit, and subject to no extraordinary hazards, differed from that of most seamen (there are certain exceptions) who are employed as a part of the ship's crew.

The Government superintends the engagement and discharge of seamen and apprentices and the terms and execution of their contract, and provides for their presence on board at the proper time. §§ 545, 561, 565. A master and the vessel are subject to penalties for taking on a seaman as one of the crew except by virtue of an agreement under such supervision. §§ 567–568, 575. But the penalties are not all on the master and the vessel. Every contract must provide the day and hour when the seaman shall render himself on board the ship. If the seaman shall neglect to be on board at the time mentioned without giving twenty-four hours' notice of his inability, he may

forfeit for every hour which he shall so neglect to render himself one-half of one day's pay. If he wholly neglects to appear or deserts, he shall forfeit all of his wages and emoluments. § 576. Unlike the land laborer, the seaman may forfeit his wages if he has not "exerted himself to the utmost to save the vessel, cargo, and stores . . . ." § 592. The seaman may not be paid any wages in advance of the time he has earned the same, and his assignment or allotment to dependents of his wages is restricted. § 599. The seaman is deprived of credit, for no sum exceeding one dollar shall be recoverable from him by any one person for any debt contracted during his service. § 602.

It is so important to the seaman that the ship be seaworthy that a majority of the crew may complain that the vessel is unseaworthy or unfit in crew, body, tackle, apparel, furniture, provisions or stores to proceed on an intended voyage and thereupon require an inquiry and a determination, and, if the charge is not sustained and the seamen refuse to proceed, they shall forfeit any wages due them. §§ 653, 655. So dependent are they that the Government provides inspection of the crew quarters, which must comply with standards, §§ 660–1, 660a, and the seamen may complain as to the provisions or water and obtain an examination. § 662.

More importantly, the seaman is not a free man. He may not, as the longshoreman or harbor worker may, protect himself by striking or quitting the job. Desertion, refusing without reasonable cause to join his vessel, absence without leave at any time within twenty-four hours of the vessel's sailing from any port, or absence from his vessel and from his duty at any time without leave and without sufficient reason, or quitting the vessel without leave after arrival at port and before she is in security, are all punishable by certain forfeitures of his wages. Moreover, at the option of the master, willful

disobedience to any lawful command at sea is punishable by being placed in irons until such disobedience shall cease, and for continued willful disobedience to such command or neglect of duty the seaman may be placed in irons and four days out of five on bread and water until such disobedience shall cease. To these penalties are added certain other forfeitures. § 701. There is more, but this is enough to demonstrate that Congress knew and respected the difference between the seaman to whom it preserved admiralty remedies plus the remedies of the Jones Act, and harbor workers, such as this claimant, who are given the remedies of the compensation Act, like most other shore workers.

I cannot bring myself to believe that it is either the congressional will or the tradition of maritime law or common sense to mingle the two wholly separate types of labor in their remedies as is being done in this case. There are other questions in the case as to division of the damages which I need not discuss, in view of my conclusion that there is no basis for recovery. I would reverse the judgment below.