Michael J. CARROLL, Libellant,

v.

S.S. SANTA ROSA, Claimant, Grace Lines Inc., Respondent.

No. 64 AD. 106.

United States District Court
S. D. New York.

May 4, 1966.

Jacob Rassner, New York City, by Donald D. Olman, New York City, Charles Graff, New York City, for libellant.

Kirlin, Campbell & Keating, New York City, by Louis J. Gusmano, New York City, for respondent-claimant.

BONSAL, District Judge.

## MEMORANDUM

Libellant alleging the unseaworthiness of the vessel, brings this libel in admiralty seeking to recover damages for personal injuries allegedly sustained by him when as a longshoreman he was engaged in unloading respondent Grace Lines' vessel the S.S. "SANTA ROSA" on March 16, 1961. At the time libellant was a longshoreman employed by respondent Grace Lines, Inc.

Respondent, Grace Lines, Inc., has moved for an order pursuant to Rule 58 of the Admiralty Rules dismissing the libel on the ground that libellant is barred from maintaining this suit under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.). Libellant has cross-moved to strike the fifth, sixth and seventh defenses in respondent's answer which allege in substance that libellant has received compensation under the Longshoremen's and Harbor Workers' Compensation Act and that this constitutes his exclusive remedy.

These motions raise again the issue of whether a longshoreman who is employed by the owner of the vessel and is entitled to compensation under the Longshoremen's and Harbor Workers' Compensation Act is barred from pursuing his traditional remedy under the maritime law. On the one hand, as respondent points out, the compensation statute provides that the remedy thereunder is exclusive. On the other hand, to deny libellant his remedy under mari-

time law is to make an invidious distinction between a longshoreman employed by an independent stevedoring company and a longshoreman employed by the owner of the vessel. Despite a well reasoned dissenting opinion by Mr. Justice Harlan, concurred in by Mr. Justice Stewart, the issue was resolved by the Supreme Court in Reed v. The Yaka, 373 U.S. 410, 83 S. Ct. 1349, 10 L.Ed.2d 448 (1963). In allowing a longshoreman to pursue his remedy under maritime law where the unseaworthiness of the vessel is in issue, the Court speaking through Mr. Justice Black stated:

> "We think it would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help longshoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service. Petitioner's need for protection from unseaworthiness was neither more nor less than that of a longshoreman working for a stevedoring company. As we said in a slightly different factual context, 'All were subjected to the same danger. All were entitled to like treatment under law.'" Citing Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 413, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

Respondent in a careful and thorough memorandum seeks to distinguish Reed from the present suit. But the Court does not perceive any material distinction. It is true that Reed involved the charterer of a vessel while respondent Grace Line is the owner of the "SANTA ROSA". However, in Reed the Supreme Court treated the charterer as the owner pro hac vice. If the owner pro hac vice is personally liable to longshoremen for the unseaworthiness of a chartered vessel a fortiori the owner is liable for the unseaworthiness of its vessel. Respondent urges that in Shenker v. United States, 322 F.2d 622 (2d Cir. 1963) the Court of Appeals limited the holding of Reed to the usual three-party situation

by referring at page 626 "to longshoreman and stevedores employed by someone other than ship owner". The Court does not agree. Shenker involved an admiralty suit by a longshoreman against the vessel which in turn impleaded the independent stevedore. Whether the Court of Appeals or indeed this Court might prefer the views of the dissenters in Reed is beside the point; both are required to follow the decision of the Court.

As pointed out by Judge Weinfeld in Hertel v. American Export Lines, Inc., 225 F.Supp. 703 (S.D.N.Y.1964) in discussing Reed:

> "The underlying rationale of the reversal was grounded upon the broad humanitarian policy of the doctrine of unseaworthiness and its purpose to protect all those engaged in the ship's service against the hazards of unseaworthiness. It rested upon the absolute and nondelegable duty of a shipowner, whether the actual owner or owner pro hac vice, to live up to the warranty of seaworthiness, and in the event of a breach, to afford the traditional remedies to an injured person to whom the duty is owing, whether he is a crew member or performing a crew member's work. Accordingly, the Court held that the employer, as the bareboat charterer, was personally liable to its employee for the unseaworthiness of the vessel and that the Longshoremen's Act did not bar him from maintaining the libel in rem. To have denied him relief upon the unseaworthiness claim would have negated the conceptual doctrine of Seas Shipping Co. v. Sieracki [328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099], and its progeny, whereby a longshoreman engaged in the performance of the traditional work of a crew member is afforded the same rights upon such a claim as a regular crew member."

Under the doctrine of Reed it is immaterial whether the longshoreman instituted compensation proceedings under the Longshoremen's and Harbor Workers' Compensation Act, or whether he has already obtained an award there-

under. If he can establish the unseaworthiness of the vessel and that the unseaworthiness of the vessel was a cause of his injury, he is entitled to recover in Admiralty under the general maritime law.

Respondent's motion to dismiss the libel is denied and libellant's motion to dismiss the fifth, sixth and seventh affirmative defenses in respondent's answer is granted.

Settle order on notice.