[Civ. No. 24337. First Dist., Div. Three. May 8, 1968.]

JOHN HENRY DAVIS, Plaintiff and Appellant, v. MATSON NAVIGATION COMPANY, INC., Defendant and Respondent.

Redland & Pinney and Van H. Pinney for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, Lawrence B. Haile and George H. Link for Defendant and Respondent.

SALSMAN, J.—Appellant brought this action against respondent to recover damages for personal injuries suffered by him when he slipped and fell on grease which was covered with sawdust while he was working as a longshoreman on the deck of respondent's ship, the S. S. Hawaiian Packer. At trial he dismissed his claim based on negligence, and the action then proceeded on the theory that, at the time of injury, the vessel was unseaworthy and that this condition caused appellant's injury and damage. Jury trial was waived. At the close of the evidence the trial judge found that (1) appellant fell while working on respondent's ship, but that at the time of his fall the ship constituted a safe place to work and was a seaworthy vessel; (2) the fall caused appellant no disabling injury, and (3) the fall was caused solely by appellant himself. Pursuant to these findings judgment was entered for respondent. The appeal challenges only the sufficiency of the evidence to support the trial court's findings. Obviously, if any one of the findings is supported by substantial evidence the judgment must be affirmed.

Appellant, a "gang boss," came aboard the S.S. Hawaiian Packer with his work crew on the night of February 24-25, 1963. He and his men, along with many other longshoremen, were engaged in loading the vessel. His crew was working at

hatch No. 1, nearest the bow of the ship. The winch serving hatch No. 2, just aft of hatch No. 1, was leaking oil on the deck, and sawdust had been spread over the area to prevent the surface from becoming slippery. The size of the sawdust area is not clearly established by the evidence. One witness testified it extended out from the hatch 8 to 12 feet, "or more," while another witness said ". . . about two or three feet. . . ." of the deck was covered with sawdust. There was evidence that it had been the practice of respondent over many years to treat such conditions by the application of sand or sawdust; that sawdust was readily available for that purpose, on board the ship and at dockside, and that it was the duty of gang bosses such as appellant to cover slippery substances on deck with sawdust.

Appellant testified that he was "walking fast" from hatch No. 1 toward hatch No. 3, when he slipped and fell in the sawdust near hatch No. 2. He reported his fall at once, and was given a slip permitting him to visit a doctor. However, he did not see a doctor until three weeks after his fall, when he consulted Dr. Raphael complaining of pain in his shoulder, arm and back. The doctor advised him to stop working, to take physiotherapy treatments, and not to lift anything. Appellant, who had worked regularly since his fall, did not quit working, although for a time he took physiotherapy treatments. More than eight months after his fall he took his mandatory three-week vacation. After his vacation period expired he remained off work for about six weeks. Thereafter he worked steadily. He was working at the time of trial.

Dr. Stehr examined appellant approximately ten months after his fall. He testified that appellant suffered from arthritis in his shoulders, spine and sacroiliac joints. He found no muscle spasm. He said in his testimony that "It is impossible, after ten months [i.e., ten months after the fall] to differentiate between a pathological condition due to a strain, and one due to arthritic processes."

Dr. Citret examined appellant approximately two and a half years after his fall. He testified he found slight spasm in the lumbar muscles, and that X-rays showed degenerative changes in the lumbar spine and sacroiliac joints. He concluded that appellant suffered from chronic low back strain and osteoarthritis of the spine, and that there was a relationship between his fall and his low back strain. He further testified that appellant's osteoarthritis was not disabling

before his fall, but was "partially disabling" at the time of his examination.

Appellant's medical records from the Kaiser Foundation Hospital were in evidence. They disclosed back, hip and joint problems extending back to 1948, with a record of treatments and visits in 1948, 1955, 1956, 1960 and 1961.

Appellant's case rests upon the single contention that the vessel upon which he was working at the time of his fall and alleged injury was unseaworthy and that this condition caused his injury for which he must be compensated by the respondent owner.

■ Under the maritime law, a seaman has a right to recover damages from the shipowner for injuries caused by unseaworthy conditions aboard ship. (*Mitchell* v. *Trawler Racer, Inc.*, 362 U.S. 539 [4 L.Ed.2d 941, 80 S.Ct. 926]; *The Osceola*, 189 U.S. 158, 175 [47 L.Ed. 760, 764, 23 S.Ct. 483].) The right extends not only to the ship's crew but to long-shoremen loading or unloading the ship while it is in port. (*Seas Shipping Co.* v. *Sieracki*, 328 U.S. 85, 90-96 [90 L.Ed. 1099, 1103-1107, 66 S.Ct. 872].) The right is greater than the right to sue the owner for negligently maintaining the ship, for it imposes upon the owner a form of absolute liability for any damages resulting from any unseaworthy condition, transitory or permanent, which is proven to exist on the ship and to have caused the seaman's or longshoreman's injuries. (*Mitchell* v. *Trawler Racer, Inc., supra.*) Whether the owner or his agents had actual or constructive notice of the condition is immaterial; the unseaworthy condition need not be present long enough for the owner or its agents to learn of its existence and correct it. (*Mitchell* v. *Trawler Racer, Inc., supra.*) Moreover, contributory negligence does not constitute a bar to recovery; it merely diminishes the recovery allowed.

In other respects, however, the doctrine is similar to the doctrine of negligence. ■ Thus, whether the vessel is unseaworthy is a question of fact, and the mere existence of a slippery substance underfoot does not constitute unseaworthi-ness *per se*. (*Mitchell* v. *Trawler Racer, Inc., supra*, p. 550 [4 L.Ed. at p. 948]; *Blier* v. *United States Lines*, 286 F.2d 920, 923; *Schell* v. *Chesapeake & Ohio Ry. Co.*, 264 F.Supp. 484, 487-489; *Pinto* v. *States Marine Corp. of Del.*, 296 F.2d 1, 4-7:) ■ The test is whether the ship and its appurtenances are reasonably fit for their intended use. Thus, although a plaintiff need not show that the owner or his agents knew, or should have known, of a transitory slippery condition, he

must show that the condition was not reasonably safe, and that the vessel was not reasonably fit, in the light of all the circumstances. The standard is a relative one, as is the reasonable man standard in negligence situations. (Cases cited, *supra.*)

▇▇ Although the legal foundation for appellant's claim is clear, the question here is whether substantial evidence supports the trial court's finding that the vessel was seaworthy. Whether or not a vessel is seaworthy is in most cases simply a question of fact. It was a question of fact in this case, and in reviewing the trial court's finding on the issue we must follow the usual rule of appellate review. If substantial evidence supports the finding, we must affirm the judgment. It is clear that ample evidence supports the finding.

The evidence established that one of the winches near where appellant worked was leaking oil and that this substance spread out on the deck in a zone of undetermined size. The area had been covered with sawdust in accordance with the usual and customary practice of respondent in order to correct any danger that might arise from a slippery substance on the deck. Sawdust was readily available, either aboard ship or at dockside, and it was one of appellant's duties to see that slippery substances were covered with sawdust. Many longshoremen were aboard the ship at the time of appellant's fall, and appellant and many others had worked about the sawdust for several hours before the accident. There was no evidence that anyone had experienced any trouble in passing through the place where the sawdust had been spread. There was evidence that appellant fell when he passed through the area at a rapid rate of speed. From this evidence the court could infer that the vessel was reasonably safe for workmen, in light of all of the circumstances. As the court declared in *Mitchell, supra,* the standard to be met is not one of perfection, but simply one of reasonable fitness.

We recognize, of course, that there are cases where a slippery substance underfoot has been held to render a ship unseaworthy. (See *Mitchell* v. *Trawler Racer, Inc., supra; Ktistakis* v. *United Cross Nav. Corp.,* 316 F.2d 869, 870; *Shenker* v. *United States,* 322 F.2d 622, 627; *Pope & Talbot, Inc.* v. *Hawn,* 346 U.S. 406 [98 L.Ed. 143, 74 S.Ct. 202].) But it does not follow that the condition described in the evidence in this case compels a finding of unseaworthiness. On the contrary, the evidence, together with reasonable inferences to be drawn from it, supports the finding of seaworthiness,

although the same evidence, viewed in a different light, might also support a contrary finding.

██ Substantial evidence also supports the finding that appellant sustained no injury as a result of his fall. As we have seen, he continued to work after the accident, and did not consult a doctor until some weeks after the event. He lost no time from work until he took his mandatory three weeks vacation more than eight months after he fell. Thereafter he remained off the job for about six weeks, but resumed work and worked steadily up to the time of trial.

There was conflict in the medical testimony. Thus, Dr. Stehr examined appellant about ten months after the accident and testified that, at the time of his examination it was impossible to tell whether appellant's disability was the result of a strain or due to arthritic processes. On the other hand, Dr. Citret, who examined appellant two and a half years after the alleged injury, expressed the opinion that there was some relationship between appellant's fall and his back condition.

There was also in evidence the Kaiser Foundation Hospital records, which disclosed appellant's history of "lumbrosacral sprain," "simple low back strain," stiffness of the joints and complaints of "arthritis and rheumatism," all prior to his fall and claimed injury. From all of this evidence the court could reasonably conclude that appellant's pain and disability were the result of natural causes and not the result of any injury sustained while working aboard respondent's ship.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied June 7, 1968.