George ANDERSON

v.

S/S GULF TRADER, etc., and Gulf & South American Steamship Company, Inc.

v.

NEW ORLEANS STEVEDORING COMPANY.

No. 7926.

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 14, 1968.

Clifton S. Carl, T/A Garrett & Carl, New Orleans, La., for libelant.

William E. Wright, T/A Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for defendant and third party plaintiff, Gulf & South American S. S. Co., Inc.

H. Purvis Carmouche, Jr., T/A Mouton, Roy, Carmouche & Hailey, New Orleans, La., for third party defendant, New Orleans Stevedoring Co. and intervenor, American Mutual Ins. Co.

MITCHELL, District Judge.

This cause of action arises out of an accident which occurred aboard the S/S *Gulf Trader* while that vessel was docked in the Mississippi River at the Port of New Orleans.

Libelant brought this action against the vessel and her owner. The shipowner impleaded libelant's employer, New Orleans Stevedoring Company, seeking indemnity, costs and attorney's fees if cast. American Mutual Liability Insurance Company intervened for compensation paid and medical expenses.

This matter was tried to the Court without a jury on May 27, 1968.

The Court, having heard the testimony of the witnesses and having considered the evidence and briefs submitted by counsel, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### 1.

Libelant, George Anderson, is a person of the full age of majority, domiciled in New Orleans, Louisiana.

### 2.

At all times material herein, respondent and third-party plaintiff, Gulf & South American Steamship Co., Inc. was a corporation authorized to do and doing business in the Eastern District of Louisiana and was the owner and operator of the S/S *Gulf Trader*.

### 3.

At all times material herein, libelant was employed as a longshoreman by third party defendant, New Orleans Stevedoring Company, a division of James J. Flanagan Shipping Corporation, a Texas corporation, authorized to do and doing business in the Eastern District of Louisiana.

### 4.

Intervenor, American Mutual Insurance Company, is the compensation insurer of New Orleans Stevedoring Company and has paid compensation benefits of Nine Thousand Six Hundred and Sixty and no/100 ($9,660.00) dollars to or on behalf of George Anderson.

### 5.

On September 8, 1965, pursuant to a contract existing between Gulf & South American Steamship Company, Inc. and New Orleans Stevedoring Company to perform stevedoring operations, George Anderson and other members of his gang were working in the No. 5 hatch loading sacks of grain weighing about 100 pounds each into a 'tween deck locker of the S/S *Gulf Trader*.

### 6.

When libelant and his fellow stevedores reported for work on September 8, 1965, at about 5:50 PM, the pallets had already been loaded with sacks of grain by New Orleans Stevedoring Company and were stored in the wharf warehouse. The loaded pallets were moved from the warehouse to shipside by a hi-lo or lift machine which would bring three pallet loads at a time. The machine would cut off the top pallet and place it on the dock where the hook on men could reach it. Thereafter the ship's winches would lift the loaded pallets from the dock and lower them into the hold, landing them on a dolly in front of the locker.

### 7.

The dollys were about 5 inches high and utilized pipe rollers for locomotion. The locker in which Mr. Anderson was working had a hatch or door (opening into the hatch proper) which did not extend down to the deck. At the base of the door, there was a coaming or door frame which was about six inches high.

The type of dolly being used could not roll over the coaming into the locker so, to facilitate the rolling of the dolly from the hatch proper into the locker, a runway of pallet boards and dunnage was constructed. A 6 inch thick pallet board was laid on either side of the coaming and dunnage about one inch thick laid atop these boards; outside the locker, the dunnage was run down to deck level.

8.

Often, during the course of moving a pallet board from the warehouse to shipside, sacks of grain would fall from the board onto the dock. By custom such sacks are thrown onto the top of a succeeding load.

The testimony reflected that the custom in the Port of New Orleans is to accumulate three empty boards and discharge them together.

9.

Immediately preceding the accident in question, a loaded pallet board containing three extra sacks (which, following custom, had been picked up from where they had fallen on the dock) was landed upon the dolly with which libelant was working. This dolly already was laden with three empty pallets.

Although libelant and his co-workers had protested the placing of the fourth loaded pallet onto the dolly, the winch man nevertheless lowered the loaded pallet without removing therefrom the three empty pallet boards.

10.

The evidence showed that the height of the dolly and its load of four pallet boards (the fourth laden with sacks) was above shoulder height and, in the locker, with the addition of the runway, the overall height was well above shoulder height.

At about 9:30 PM, immediately after the dolly was rolled into the locker, libelant removed an extra sack from the top of the load and, as he turned to stow it, four sacks fell, one striking him on the outside of his left knee.

11.

The Court finds that palletized sacks weighing approximately 100 pounds each are unsafe to handle where they are stowed above shoulder height on a dolly. Under such circumstances, a sack cannot be lifted but must be dragged across the sacks beneath it. Libelant and his co-workers did nothing which contributed to the accident. The Court finds as a fact that the extra sacks and the fourth or extra pallet board created an unseaworthy condition which was the proximate cause of the accident and injuries sustained by libelant.

12.

Third-party defendant, New Orleans Stevedoring Company, was responsible for the method of loading, for palletizing the cargo and for creating the unseaworthy condition existing aboard the S/S *Gulf Trader* and hence breached its warranty of workmanlike service.

13.

At the time of the accident, libelant was 39 years of age, earning an average of One Hundred Forty One and 97/100 ($141.97) dollars per week. Dr. George G. Brown, Jr. testified that libelant had undergone surgery on his knee on three different occasions and, during the last operation, libelant's knee cap was removed.

He further testified that at present libelant is at least 35% disabled and will never be able to return to longshoreman work but could possibly, at some future time, return to some other type of work.

CONCLUSIONS OF LAW

1.

This Court has jurisdiction of this action and venue is properly laid in the Eastern District of Louisiana.[1]

2.

The unsafe condition created by the height of the palletized cargo ren-

1. 28 U.S.C. § 1333.

dered the S/S *Gulf Trader* unseaworthy.[2]

### 3.

■ The defendant-shipowner owed the absolute and non-delegable duty to provide a seaworthy vessel to George Anderson, who was engaged as a longshoreman doing work traditionally performed by seamen.[3]

### 4.

The Court concludes that the manner in which the dolly was loaded rendered the vessel unseaworthy and such unseaworthiness was the proximate cause of the injuries sustained by libelant.

### 5.

■ The throwing of extra sacks onto the top of the pallet load in question under the circumstances then obtaining violated a Coast Guard requirement that cargo drafts be constructed in such a manner that the cargo will not fall therefrom.[4] These regulations establish a standard of care to which all concerned must conform and a failure to conform renders a vessel unseaworthy.[5]

### 6.

■ Even though the stevedore violated the regulations which created the unseaworthy condition proximately causing the plaintiff's injuries, shipowner is liable even though it did not know of the dangerous condition.[6]

### 7.

The Court concludes that New Orleans Stevedoring Company in creating the unseaworthy condition which was the proximate cause of libelant's injuries, breached its warranty of workmanlike service owed to the shipowner, and Gulf & South American Steamship Company, Inc. is entitled to indemnity from New Orleans Stevedoring Company.[7]

### 8.

Let judgment be entered in favor of libelant, George Anderson, and against defendant, Gulf & South American Steamship Co., Inc., in the sum of Seventy Five Thousand and no/100 ($75,000.00) dollars, with interest from date of judgment.

### 9.

Let judgment be entered in favor of intervenor, American Mutal Insurance Company, entitling intervenor to recover out of the sum awarded libelant, compensation and medical benefits in the sum of Sixteen Thousand Seven Hundred Fifty Nine and 26/100 ($16,759.26) dollars, paid to or for libelant.

### 10.

Let judgment be entered in favor of Gulf & South American Steamship Company, Inc. and against New Orleans Stevedoring Company for all sums for which Gulf & South American Steamship Company is cast and for all reasonable attorneys' fees and costs.

2. Neal v. Lykes Bros., etc., 306 F.2d 313 (CA 5–1962).

3. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

4. 28 CFR 1504.82.

5. Marshall v. Isthmian Lines, 334 F.2d 131 (CA 5–1964); Provenza v. American Export Lines, 324 F.2d 660 (CA 4–1963).

6. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Provenza v. American Export Lines, supra.

7. Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).