**James F. YOUNG, Plaintiff,**

v.

**CHEVRON OIL COMPANY, Defendant.**

**Civ. A. No. 68–68.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

May 4, 1970.

Robert M. Johnston, New Orleans, La., for plaintiff.

Wood Brown, III, Theodore Dimitry, Breard Snellings, Lloyd Melancon, Christopher Tompkins, Donald L. King, New Orleans, La., for defendant.

RUBIN, District Judge.

## RULING ON MOTION BY TIDEX FOR SUMMARY JUDGMENT

The primary question for decision is whether a roustabout injured while engaged in transferring discharged cargo from the dock to a storage area by means of a shore-based crane is entitled to the warranty of seaworthiness. The injury occurred on shore. There is no allegation that the cargo being transferred or the cargo containers were defective; nor is there a claim that any appurtenance of the vessel was defective in a manner that proximately caused the injuries. The sole allegation is that the mobile, land-based crane being used to transfer the cargo was defective and that the plaintiff was injured while engaged in an "integral part of the unloading of the vessel and was thus, as a matter of law, in the service of the vessel." The allegedly defective crane was not used to unload the cargo from the vessel to the dock, but was being used merely to clear the dock of the discharged cargo.

On February 24, 1967, James F. Young, a roustabout operating a Drott Go-Devil crane at Chevron Oil Company's yard near Venice, Louisiana, was injured when the crane turned over. On the morning of the accident a cargo of tools had been unloaded from a supply boat alleged to have been the M/V ROUGH TIDE onto Chevron's dock by a large capacity crane (the Newman crane) located on the dock. Young was using the Drott crane to transfer the cargo, consisting of baskets of metal stabilizers, from the dock to a toolrack. Young claims that the crane was defective and asserts an unseaworthiness claim against the owners and operators of the M/V ROUGH TIDE and their liability insurer.

While there is a conflict in deposition testimony between the plaintiff and George Hamrick, Chevron's supervisor at the Venice yard, concerning the amount of time that elapsed between the unloading of the vessel and the time that Young's crew began removing the baskets of tools to a storage area, it is undisputed that it was at least one hour. Young was injured at 9:00 a. m. Hamrick testified that the entire cargo was already unloaded and on the dock when Young's crew relieved the night crew at 5:00 a. m. It is thus possible that the cargo had been on the dock for four hours before the dock clearing operation began.

Tidex has moved for summary judgment dismissing Young's claim on the ground that the warranty does not apply, hence Young's claim is nonmaritime in nature; and, if so, it has prescribed since the accident occurred on February 24, 1967 and suit was not filed until June 27, 1969. As an alternative ground for its motion Tidex urges that, even if it be

conceded that the warranty of seaworthiness applies, Young was not injured through a breach of the warranty.

## WAS YOUNG ENTITLED TO THE WARRANTY OF SEAWORTHINESS?

### 1. SHIPBOARD INJURIES

In *Sieracki* the United States Supreme Court held that longshoremen injured on board a vessel while engaged in unloading cargo were entitled to the warranty of seaworthiness. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. The Court's rationale was that, although this worker was land-based, he was performing work traditionally done by the members of the ship's crew and he was exposed to many of the marine perils that endanger blue-water sailors and should be afforded the same protection.

> "[F]or injuries incurred while working on board the ship in navigable waters the [longshoreman] is entitled to the seaman's traditional and statutory protections, regardless of the fact that he is employed immediately by another than the owner. For these purposes he is, in short, a seaman because he is doing a seaman's work and incurring a seaman's hazards. Moreover, to make the policy effective, his employer is brought within the liability which is peculiar to the employment relation to the extent that and because he also undertakes the service of the ship." 328 U.S. 85, 99–100, 66 S.Ct. 872, 879–880.

The Court reasoned that the "norm of liability" is based on the question whether the injured person is doing "the work of maritime service." 328 U.S. at 90, 66 S.Ct. at 875. The foundation of liability is not, however, consensual but is "essentially a species of liability without fault * * *." 328 U.S. at 94, 66 S.Ct. at 877. The "liability arises as an incident * * * of performing the ship's service * * *." 328 U.S. at 97, 66 S.Ct. at 878. But as to longshoremen working on wharves, their employer, the stevedore, is not liable under the Jones Act, 46 U.S.C. § 688. Swanson v. Marra Bros., 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045. Nor are longshoremen injured while working ashore or on piers attached to the shore afforded the protection of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. Nacirema Operating Co. v. Johnson, 1969, 396 U.S. 212, 90 S.Ct. 347, 24 L. Ed.2d 371. See also, Labit v. The Carey Salt Company, 5 Cir. 1970, 421 F.2d 1333 and Kent v. Shell Oil Company, 5 Cir. 1961, 286 F.2d 746. Their sole remedy against their employer is under state law.

### 2. DOCKSIDE INJURIES RESULTING FROM DEFECTS IN SHIP'S EQUIPMENT, SHORE-BASED EQUIPMENT, OR CARGO

In Gutierrez v. Waterman Steamship Corp., 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297, the Court later held that a longshoreman injured on the dock while engaged in the unloading operation was entitled to the warranty. The protection afforded those who do seamen's work was not to be strictly limited to injuries occurring aboard vessels. Extension of Admiralty Jurisdiction Act of 1948, 62 Stat. 496, 46 U.S.C. § 740. The Court held that the warranty of seaworthiness "extends to longshoremen on the pier who are unloading the ship's cargo." 373 U.S. at 212, 83 S.Ct. 1189. A longshoreman injured when he slipped on beans that had spilled from defective bags was therefore accorded the protection given longshoremen injured aboard the vessel. "[T]he tort of unseaworthiness arises out of a maritime status or relation and is therefore 'cognizable by the maritime [substantive] law whether it arises on sea or on land.'" 373 U.S. at 214, 83 S.Ct. at 1190. See also, Hagans v. Ellerman & Bucknall Steamship Company, 3 Cir. 1963, 318 F.2d 563, where the longshoreman was injured on a pier when he slipped on sand that had spilled from discharged bags of sand he was removing from a flatcar.

Nor is this doctrine limited to the unseaworthiness of gear actually aboard the vessel. In Deffes v. Federal Barge Lines, Inc., 5 Cir. 1966, 361 F.2d 422, the tort of unseaworthiness was held to extend to a shore-based hopper, or marine leg, used in unloading grain. This decision followed Spann v. Lauritzen, 3 Cir. 1965, 344 F.2d 204, cert. denied, 382 U.S. 938, 86 S.Ct. 386, 15 L.Ed.2d 348, and Huff v. Matson Navigation Company, 9 Cir. 1964, 338 F.2d 205, cert. denied, 1965, 380 U.S. 943, 85 S.Ct. 1026, 13 L.Ed.2d 963. "Loading and unloading is clearly held to be 'work in the ship's service.' * * * Pope & Talbot v. Hawn [1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143] instructs us to look to the *type of work* performed to determine the extent of liability under the doctrine of seaworthiness." (Emphasis in original.) 361 F.2d at 425. (Citations omitted.)

Other decisions have also held longshoremen entitled to the warranty when they were working on docks and wharves and were injured by ship's equipment, or by shore-based equipment. These decisions are reviewed and discussed in Bue, Admiralty Law in the Fifth Circuit—A Compendium For Practitioners: I, 4 Houston Law Review 347, 401–404 (1966). See also Byrd v. American Export Isbrandtsen Lines, Inc., E.D.Pa.1969, 300 F.Supp. 1207 and the discussion in Norris, Maritime Personal Injuries, § 41 (2d ed.1966).

3. DOCKSIDE INJURIES RESULTING FROM SHORE-BASED EQUIPMENT WHILE TRANSFERRING CARGO OFF THE WHARVES

Young was injured as a result of an alleged defect in shore-based equipment while transferring cargo off the wharves after it had been unloaded from a vessel. While Young claims he was injured in the "unloading operation" and claims that the transfer of discharged cargo is an "integral part" of the unloading operation, the cargo had already been unloaded from the supply boat by another crew using another crane at least one hour before he tried to clear the dock; the Drott Go-Devil was not used to remove the supplies or tools from the supply boat to the dock.

The transfer of cargo subsequent to the actual unloading of the vessel is an indispensable part of the process of getting it moved from the port of shipment to its ultimate destination, but this act is not sufficiently connected with the unloading of a vessel to make it a part of the seaman's work. Since Young was injured while transporting cargo at such a time, he was not injured as a result of exposure to the usual hazards met by seamen and is not entitled to the protection afforded them.

■ It need not here be decided which, if any of the operative factors are crucial, if indeed any one of them is. Here we decide only that the vessel does not warrant the seaworthiness of land-based equipment used to transfer discharged cargo from the dock to a storage area after the actual unloading of the vessel has come to an end.

Accordingly, the motion by Tidex for summary judgment dismissing Young's complaint against Tidewater Vessels, Inc. and Tidex, Inc.; for summary judgment dismissing Chevron's cross-complaint against Tidex and Tidewater Vessels; and to dismiss Chevron's third party complaint against Insurance Company of North America, Underwriters at Lloyd's London and British Insurance Company is granted.